## GILLETTE v. NEWHOUSE REALTY CO.

No. 4783.   Decided July 31, 1929.   (282 P. 776.)
Rehearing Denied December 13, 1929.

14

*Fabian & Clendenin,* in Salt Lake City, for appellant.

*L. E. Cluff and Henry D. Moyle,* both of Salt Lake City, for respondent.

ELIAS HANSEN, J.

The defendant prosecutes this appeal from a judgment rendered against it in favor of the plaintiff for the sum of $3,400. The judgment appealed from is for professional services rendered by the plaintiff in the capacity of an attorney at law for the Bonneville Hotel Company. After the

plaintiff rendered the services which form the basis of this action the defendant purchased certain property from and assumed and agreed to pay certain obligations of the Bonneville Hotel Company. The plaintiff contends that his claim against the Bonneville Hotel Company for professional service is one of the obligations which the defendant assumed and agreed to pay. The facts established by the evidence are as follows: From prior to March, 1912, until January, 1925, the Bonneville Hotel Company was a corporation engaged in operating the Newhouse Hotel at Salt Lake City, Utah. Plaintiff is an attorney at law and has been engaged in the practice of law for about 20 years. Plaintiff was a director and the secretary of the Bonneville Hotel Company during all the time it was engaged in operating the Newhouse Hotel. He also acted in the capacity of its general attorney. J. H. Waters was the managing director of the Bonneville Hotel Company during the time involved in this controversy. As a part of its business in conducting the Newhouse Hotel the Bonneville Hotel Company operated an elevator for the convenience of its guests. The elevator was installed by the Otis Elevator Company under a contract with the Bonneville Hotel Company. On March 21, 1922, the elevator, while being operated by the Bonneville Hotel Company at the Newhouse hotel, dropped to the basement from the mezzanine floor causing injury to a number of passengers who were on the elevator. Among the persons injured were Mrs. Estella Waters, the wife of J. H. Waters, managing director of the Bonneville Hotel Company, Mrs. Florence Allgood, Mrs. Glenna A. Sutton, Mrs. Gertrude Berg, all sisters of Mrs. Waters, E. H. Berg, the husband of Mrs. Gertrude Berg, Elmer Berg, a brother of E. H. Berg, and Ruth Snow. Each of the foregoing persons brought an action to recover for their injuries sustained in the accident. The first action begun was brought by Elmer Berg against the Bonneville Hotel Company alone. In the other actions the Bonneville Hotel Company and the Otis Elevator Company were sued jointly. The plaintiffs claimed

that the Bonneville Hotel Company was negligent in the manner in which the elevator was operated at the time of the accident, and that the Otis Elevator Company was negligent in the manner in which the elevator was installed.

When the action of Elmer Berg against the Bonneville Hotel Company was begun the plaintiff and A. L. Hoppaugh of the law firm of Dey, Hoppaugh & Mark were employed to defend the Bonneville Hotel Company. The contract of employment was entered into on behalf of the hotel company by J. H. Waters its managing director. So far as appears Waters did not consult the board of directors of the Bonneville Hotel Company concerning the matter of employing counsel to defend the company. The terms of plaintiff's employment are contained in a letter written by him, which letter reads as follows:

"Salt Lake City, May 5, 1922.

"Bonneville Hotel Co., Salt Lake City, Utah. Gentlemen: Confirming the conversation had with your Mr. Waters today. I beg to advise that in the case of Berg vs. Bonneville Hotel Company, et al., I will accept a retainer of $250.00, together with $50.00 per diem while engaged in Court in trial of this case.

"In regard to any other cases that might be brought against the Hotel Company, growing out of the accident to the elevator, I will agree to assist in the defense of these cases without any retainer whatsoever, with a payment of $50.00 per day for all time consumed in actual trial.

"In regard to any case which may be brought against the Otis Elevator Company. I agree to assist in the trial of that case and receive for my services $50.00 per day, while in the trial together with 10% of any amount recovered.

"If this meets with your approval, please advise me.

"Yours very truly,          C. A. Gillette."

The Bonneville Hotel Company by its managing director, J. H. Waters, accepted the offer contained in the foregoing letter.

The trial of the case of Elmer Berg against the Bonneville Hotel Company resulted in Berg securing a judgment. No appeal was taken from the judgment. According to plaintiff's testimony he and his associate succeeded in fixing

responsibility for the elevator accident upon the Otis Elevator Company during the trial of the case of Elmer Berg against the Bonneville Hotel Company.

The next case growing out of the elevator accident to be begun and tried was that of Gertrude Berg against the Bonneville Hotel Company and the Otis Elevator Company. The trial of that case resulted in Mrs. Berg securing a judgment against both the Bonneville Hotel Company and the Otis Elevator Company for the sum of $9,000. The Otis Elevator Company appealed from the judgment. This court affirmed the judgment, 64 Utah 518, 231 P. 832. The Otis Elevator Company paid to Gertrude Berg the amount of the judgment together with interest and costs. The plaintiff testified that when the case of Gertrude Berg against the Bonneville Hotel Company and the Otis Elevator Company was begun he and Mr. Hoppaugh informed Mr. Waters that the situation had entirely changed, and that they desired other arrangements as to their fees, that they and Mr. Waters on behalf of the Bonneville Hotel Company entered into a new or amended agreement as to attorneys' fees, that it was then orally agreed that plaintiff should be paid, in addition to the $250 retainer and $50 per day, a sum equal to 10 per cent of any amount which the Otis Elevator Company should pay to persons injured in the elevator accident, which would result in relieving the Bonneville Hotel Company from liability on account of the injuries sustained by the passengers who were injured when the elevator dropped. Similar arrangements were made with Mr. Hoppaugh. The plaintiff further testified that after the Otis Elevator Company paid the judgment rendered against it in favor of Mrs. Berg, he and Mr. Hoppaugh requested Mr. Waters to pay to each of them 10 per cent of the amount of the judgment secured by Mrs. Berg, that Waters said that he preferred to defer payment until all of the cases were disposed of, and that the attorneys agreed to wait. At about the time of this conversation Mr. Hoppaugh wrote the following letter to the Bonneville Hotel Company:

"Salt Lake City, May 4, 1922.

"Bonneville Hotel Company, Newhouse Hotel, Salt Lake City. Gentlemen: Concerning our conversation with Mr. Gillette and with respect to the case of Elmer Berg vs. Newhouse Hotel, and any other litigation which may arise as the result of the accident occurring on March 21, 1922, at which time your elevator No. 2 carrying Berg and other passengers dropped to the basement, causing injury to a number of persons, we beg to advise you:

"There seems to be, from your statement, no question concerning your liability. Although you had no knowledge of the affair and were innocent and guilty of no act of negligence or other wrong-doing, nevertheless the law holds you responsible for the acts of your agent. The Otis Elevator Company stands in the position of your servant or agent and through negligence in the installation of this elevator in some way the injuries occasioned to Mr. Berg and others were caused. Your remedy seems to be to compel the Otis Elevator Company to respond in judgment and to either indemnify you or directly make good to the parties injured. You may be sued alone, in which event, of course, you must in turn sue the Otis Elevator Company, or if the Otis Elevator Company is joined with you as co-defendant you should make it appear as clearly as possible that the injury was due—not to your own direct act, but was the result of negligence of the Otis Elevator Company without fault on your part. This is all upon the assumption that there was negligence, and, we take it from the evidence which you have submitted, that the accident was not due to crystallization of the steel cable but to faulty installation. If it were possible to avoid liability honestly, of course, we would suggest defending squarely upon the merits. Since, however, this does not seem possible, there remains but one course for you to pursue, viz.: Bring out the facts fairly and honestly, see that no excessive damages are recovered and show that the accident was not due to any direct act of yourself but (if it resulted from negligence at all) the negligence was the negligence of the Otis Elevator Company and that you are only responsible because that corporation was your agent.

"Since, in our judgment, there is no escape from liability by you, it is obvious that to the extent that judgments are collected,—not from you but from the Otis Elevator Company—you are relieved of the payment of moneys which you must otherwise pay to compensate the parties injured. There may be possibly the right of contribution on the part of the Otis Elevator Company; that is, the right to partial reimbursement from you should they be compelled to pay. This we doubt although, of course, we can but express our opinion. At all events, you must either pay all the damages or pro-

tect yourself as far as you consistently can. You and the Otis Elevator Company may have some defense in common, in other respects you will be entirely antagonistic because the Otis Elevator Company to excuse itself from liability must attempt to show that their work was perfectly done and that the accident was due to some fault of yours entirely apart from their acts as agents.

"Now as to the question of fees: We do not take cases on a contingent fee, but we always consider the amount involved in the litigation and the results accomplished. There may be large judgments here. If we relieve you in whole or in part and compel the Otis Elevator Company to pay these judgments, this is an element which should be taken into consideration in fixing our compensation. We suggest the following charges which we will make and you may treat this as a definite proposition to be accepted by you if you desire:

"(a) A retainer of Five Hundred Dollars, to be in full for all office services in the case of Elmer Berg vs. Newhouse Hotel Company and others and also in full as a retainer for office work in all other litigation either against you alone, or against you and the Otis Elevator Company, or brought by you against the Otis Elevator Company, or any other parties, growing out of the fall of your elevator on March 21, 1922. In brief, this retainer is to be a retainer covering all litigations growing out of the accident.

"(b) A per diem of Fifty Dollars per day for each and every day any member of this firm attends court in connection with any of this litigation.

"(c) Ten per cent of all moneys paid either upon judgment or on any compromise of suits or causes of action arising out of the litigation, by the Otis Elevator Company (This is to be paid whether the Otis Elevator Company recovers or seeks to recover contribution; that is, partial reimbursement from you for the moneys paid or not) and this ten per cent shall include ten per cent upon the moneys paid by the Otis Elevator Company to parties plaintiff who have been injured as well as moneys paid upon any judgment you recover against the Otis Elevator Company. This ten per cent upon all of such moneys shall be payable absolutely and at all events without regard to whether you recover anything from the Otis Elevator Company or they recover anything from you.

"(d) The retainer above referred to shall be payable immediately. The per diem of Fifty Dollars per day shall be payable as and when bills are rendered by us.

"(e) The ten per cent of all moneys paid by the Otis Elevator Company either upon judgment or in compromise shall be payable when all the litigation in which you are directly or indirectly a party growing out of the accident above referred to is finally terminated.

"If the proposition stated herein meets with your approval will you kindly sign one copy of this letter at the place marked 'We approve and agree to the above,' and this letter will constitute the contract between us.

"Very truly yours,
"Dey, Hoppaugh & Mark,
"By A. L. Hoppaugh.

"We approve and agree to the above.
"Bonneville Hotel Co.,
"By J. H. Waters, Managing Director."

The foregoing letter was dated May 4, 1922, so that it would appear on its face to cover the services theretofore rendered. Plaintiff also testified that at the time Mr. Waters approved the new or amended written agreement with the firm of Dey, Hoppaugh & Mark he orally informed the plaintiff that the Bonneville Hotel Company would pay him the same per cent that was to be paid to Mr. Hoppaugh. Dan B. Shields, an attorney at law, testified that Mr. Waters informed him that the plaintiff was to receive the same compensation as Mr. Hoppaugh. No evidence was offered by the defendant to dispute plaintiff's testimony concerning the agreed compensation that plaintiff was to receive for his services.

Before the decision of this court was announced in the Gertrude Berg Case, separate actions were begun by Mrs. Estella Waters, Mrs. Glenna A. Sutton, E. H. Berg, and Ruth Snow against the Otis Elevator Company and the Bonneville Hotel Company. Two of these cases were tried before, and two after the decision of this court was announced in the Gertrude Berg Case. Each of the plaintiffs in those actions secured a judgment against both of the defendants. The Otis Elevator Company alone appealed from the judgments. This court affirmed the judgment in favor of E. H. Berg in the sum of $5,000, and reversed the judgments in the other three cases. Upon the appeals all four cases were submitted together, and the decision of this court disposes of all four cases in one opinion,

68 Utah 85, 249 P. 437. The Otis Elevator Company paid E. H. Berg the amount of his judgment. Florence Allgood also brought an action against both the Otis Elevator Company and the Bonneville Hotel Company. She secured a judgment against the Bonneville Hotel Company alone. No appeal was taken from the judgment. The Bonneville Hotel Company brought an action in the federal court against the Otis Elevator Company. In that action the Bonneville Hotel Company claimed that it had been damaged in the sum of $300,000 on account of costs, attorneys' fees, judgments rendered against it and loss of business—all occasioned by the negligent manner in which the Otis Elevator Company installed the elevator in the Newhouse Hotel. That action was not tried. After the Waters, Sutton, and Snow Cases were reversed by this court a settlement was made of those cases and the case of Bonneville Hotel Company v. Otis Elevator Company. The Otis Elevator Company paid to Mesdames Waters, Sutton, and Snow the sum of $20,000 in full settlement of their claims on account of the injuries sustained by them in the elevator accident, and the Bonneville Hotel Company dismissed with prejudice its action against the Otis Elevator Company. In all of these proceedings the plaintiff was of counsel for the Bonneville Hotel Company. For his services he has been paid $250 retainer and $50 per day during the time the various cases were being tried. In this action plaintiff seeks to recover 10 per cent of the $9,000 paid to Gertrude Berg in satisfaction of her judgment, the $5,000 paid to E. H. Berg in satisfaction of his judgment, and the $20,000 paid to Mesdames Waters, Sutton, and Snow in settlement of their claims.

It is earnestly urged on behalf of the appellant in this action that plaintiff's alleged contract of employment in so far as it provides for the payment to the plaintiff by the Bonneville Hotel Company of "ten per cent of all moneys paid either upon judgment or on any compromise by the Otis Elevator Company to parties plaintiff who had been injured and without regard to whether the Bonneville Hotel

Company recover anything from the Otis Elevator Company or they recover anything from you (Bonneville Hotel Company)" is void because against public policy.

It is a well-settled general rule that an attorney cannot represent conflicting interests. For more cogent reasons an attorney may not, by a contract of employment with his client, place himself in a position where his own interests are in conflict with those of his client. The relation of attorney and client is one of trust and confidence requiring the attorney to use all the care, skill, and diligence at his command to serve his client alone without any obligation to serve a master whose interests may be adverse to those of his client, and without any temptation to serve his own interests at the expense of the interests of his client. The rule that an attorney may not by his contract of employment place himself in a position where his own interests or the interests of another whom he represents, conflict with the interests of his client, is founded upon principles of public policy. It is designed to serve various purposes, among them, to prevent the dishonest practitioner from fraudulent conduct, to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties or between his own interests and those of his client, to remove from the attorney any temptation which may tend to cause him to deviate from his duty of enforcing to the full extent the right of his client, to further the orderly administration of justice, and to foster respect for the profession and the courts. In cases where applicable the rule has been rigidly adhered to by the courts. Do the facts in the instant case bring the plaintiff within the rule? The plaintiff was employed by and apparently worked under the direction of Mr. Waters. The wife of Mr. Waters, her sisters, and a brother-in-law were seeking compensation for their injuries. That Mr. Waters should desire that his wife and his other relatives by marriage should receive compensation for their injuries was but natural. Plaintiff testified that Mr. Waters

stated that he desired to have plaintiffs in the various actions recover for their injuries providing the Bonneville Hotel Company was not compelled to pay the judgments secured. By the terms of the amended contract employing plaintiff his fees were increased in proportion to the increase in the judgments secured by the persons injured in the elevator accident. For every dollar that the injured persons recovered from the Otis Elevator Company plaintiff's client was obligated to pay 20 cents, 10 cents to the plaintiff and 10 cents to his associate. The 20 per cent "shall be payable absolutely and at all events and without regard to whether you [The Bonneville Hotel Company] recover anything from the Otis Elevator Company or they [Otis Elevator Company] recover anything from you (The Bonneville Hotel Company)." Obviously the only benefit that the Bonneville Hotel Company could derive from the injured persons securing satisfaction of their claims from the Otis Elevator Company was that thereby the Bonneville Hotel Company would be relieved from liability to respond in damages. If the injured persons secured a small judgment, it would serve the purposes of the hotel company as well as would a large judgment. The smaller the judgment the smaller would be the attorney's fee that the Bonneville Hotel Company would be obligated to pay. At the time the contract of employment here involved was entered into, counsel for the Bonneville Hotel Company were apparently uncertain whether their client would be relieved from ultimate liability, even though the injured persons secured judgments against the Otis Elevator Company and such judgments were paid by the Otis Elevator Company. In the communication which plaintiff claims contains the terms of his employment it is said: "There may be possibly the right of contribution on the part of the Otis Elevator Company; that is, the right to partial reimbursement from you should they be compelled to pay. This we doubt although, of course, we can but express our opinion." Thus, by the terms of the amended contract of employment relied upon in this action by the

plaintiff we have the anomalous situation of the client agreeing to pay its attorneys 20 per cent of judgments which the client may ultimately be compelled to pay. Under the contract here relied upon by the plaintiff an increase in his compensation was not dependent upon the attainment of favorable results for his client. For plaintiff to secure additional compensation for his services the injured persons must secure judgments. The larger the judgments the larger plaintiff's compensation. If the Bonneville Hotel Company and its codefendant, the Otis Elevator Company, should be relieved of all liability, the plaintiff must be content with his retainer and per diem as full compensation for his services. True, to entitle plaintiff to additional compensation, the judgments in favor of the injured persons must be against the Otis Elevator Company, but it is difficult to see how that fact would aid plaintiff's client if it should ultimately be compelled to pay the judgments. Obviously one of the objects sought to be attained by the contract here involved was to induce counsel for the Bonneville Hotel Company to secure or permit large judgments to be rendered in favor of the persons who were injured in the elevator accident. If the injured persons secured the desired judgments, the property of the stockholders of the Bonneville Hotel Company would be dissipated in the payment of additional attorney's fees. The payment of additional attorney's fees under the contract was not contingent upon the Bonneville Hotel Company being relieved from liability. According to the expressed views of the counsel employed to protect the interests of the Bonneville Hotel Company, there was the possibility that their client would eventually be required to pay the judgments. Should such a contingency arise, the Bonneville Hotel Company would be in a position of paying attorney's fees for securing judgments against itself, and the larger the judgments the larger the fees. If the injured persons had contracted to pay the attorneys for the defendant hotel company an amount equal to 20 per cent of any money that they recovered on account of their

injuries, there could be no doubt that such a contract would be void because against public policy. Upon principal we are unable to see how a contract providing for the payment by the hotel company of a sum equal to 20 per cent of the money recovered by the injured persons stands upon any higher plane. Indeed, in some respects the latter is more objectionable that would be the former. That such a contract is against public policy is not open to serious doubt.

Not only does the contract relied upon by the plaintiff in this action offend against the doctrine that an attorney may not by a contract of employment place himself in a position inconsistent with the performance of his full duty to his client, but the approval of such a contract would tend to bring the courts and the profession into disrepute. The orderly administration of justice demands that, when counsel appear in court purporting to represent a client, such representation is all that it purports to be. A contract between an attorney and his client which tends to place the attorney in a false light before the court is against public policy. Stated in the language of Judge Morrow in *Re Boone* (C. C.) 83 F. 944 at page 957:

"Courts owe a duty to themselves, to the public, and to the profession which the temerity or improvidence of clients cannot supersede."

In the instant case there is no doubt but that the interests of the injured persons were adverse to the interests of the Bonneville Hotel Company. The injured persons were seeking compensation for their injuries from the hotel company because of the alleged negligence of the hotel company. The hotel company, by its pleadings, was resisting the claims made by the injured persons. The provisions in plaintiff's contract of employment for the payment to him by the Bonneville Hotel Company of 10 per cent of any judgments which the injured persons received against the Otis Elevator Company was calculated to induce plaintiff to aid the cause

of the injured persons. Such provisions could not well have been intended by Mr. Waters when he entered into the contract on behalf of the Bonneville Hotel Company to serve any other purpose.

It is not necessary in this proceeding to determine whether the objectionable provisions in plaintiff's contract of employment did or did not result prejudicially to the interests of the Bonneville Hotel Company. If such provisions are calculated to accomplish such result or tend to place counsel for the Bonneville Hotel Company in a false position before the court in the trial of causes growing out of the elevator accident, they are against public policy. That the undertaking of the Bonneville Hotel Company to pay its attorneys a percentage of the judgments secured by the injured persons was calculated to divert the efforts of the plaintiff and his associate from the interests of their client is apparent. During the trial of the cases growing out of the elevator accident the trial court, other counsel, and the jury had a right to assume and proceed upon the theory that counsel of record for the Bonneville Hotel Company were not representing the injured persons, but that they were in fact and not merely ostensibly counsel for the hotel company. To permit counsel to appear in a cause as attorney of a defendant when his contract of employment provides for additional compensation in the event the plaintiff succeeds is contrary to the ethics of the profession. Under the facts in this case it is quite improbable that the attorneys for the Bonneville Hotel Company could do their full duty to their client and at the same time devote their efforts to secure or fail to use their best efforts to prevent large judgments being rendered in favor of the injured persons. During the course of the trial other counsel in the case, the trial court, and the jury might well be deceived by counsel for a defendant secretly or openly espousing the cause of the plaintiff. The approval of such a practice must inevitably lead to confusion in judicial procedure and tend to bring the courts and the profession into disrepute. We

are thus of the opinion that the provisions in plaintiff's contract of employment whereby he was to be paid 10 per cent of any amounts which the Otis Elevator Company should pay to the persons injured in the elevator accident are void because against public policy. In reaching this conclusion we have carefully examined the cases and authorities cited by counsel and have made an independent search to find cases where the facts are comparable with the facts in this case. Neither the efforts of counsel nor our efforts have been rewarded by finding a case directly in point. The principles of law involved, however, are elementary. The following cases cited in appellant's brief bear upon the questions here discussed: *Steger* v. *Hume,* 97 Tex. 324, 79 S. W. 19; *Thomas* v. *Turner's Adm'r,* 87 Va. 1, 12 S. E. 149, 668; *Merryman* v. *Euler,* 59 Md. 588, 43 Am. Rep. 564; *Owers* v. *Olathe Silver Min. Co.,* 6 Colo. App. 1, 39 P. 980; *Sutliff* v. *Clunie,* 4 Cal. Unrep. 697, 37 P. 224; *Darlington's Estate,* 147 Pa. 624, 23 A. 1046, 30 Am. St. Rep. 776; *Thomas* v. *Matthews,* 94 Ohio St. 32, 113 N. E. 669, L. R. A. 1917A, 1068; *West* v. *Camden,* 135 U. S. 507, 10 S. Ct. 838, 34 L. Ed. 254; *Wilbur* v. *Stoepel,* 82 Mich. 344, 46 N. W. 724, 21 Am. St. Rep. 568; *Enyart* v. *Orr,* 78 Colo. 6, 238 P. 29; *Ridge* v. *Healy* (C. C. A.) 251 F. 798. See, also, 2 R. C. L. 974.

It is further urged on behalf of appellant that plaintiff was obligated on his original contract of employment to perform all of the services that were performed by him for the compensation which he has already received, and that therefore there was no consideration for the promise of the Bonneville Hotel Company to pay him the additional compensation which he seeks to recover in this action. Having reached the conclusion that the contract relied upon by the plaintiff in this action is void because against public policy, it becomes unnecessary to discuss or decide appellant's contention in such respect.

Appellant also contends that the evidence fails to show that it assumed or agreed to pay the claim upon which this action is founded. The evidence upon this issue is all docu-

mentary. In 1925 the Bonneville Hotel Company and defendant entered into a written contract whereby the Bonneville Hotel Company agreed to sell and the defendant agreed to buy the personal property, the lease of the Newhouse Hotel, book accounts, and bills receivable owned by the Bonneville Hotel Company and used in the operation of the Newhouse Hotel. The contract of sale and purchase contains a provision that the Newhouse Realty Company assumed and agreed to pay "all of the outstanding business and trade indebtedness" of the Bonneville Hotel Company, "but not any indebtedness or liability arising out of tort or negligence * * * and does not assume and does not agree to pay any judgment against or debt or liability of said The Bonneville Hotel Company arising out of or based on any accident, tort, or negligence, and does not assume and does not agree to pay any judgment, liability or claim arising out of the elevator accident in said Newhouse Hotel on or about March, 1921." In compliance with the contract of sale and purchase, the Bonneville Hotel Company executed and delivered to the defendant a bill of sale transferring to it the property mentioned in the contract. The defendant executed and delivered to the Bonneville Hotel Company a "receipt and release" which contains this provision:

"The Newhouse Realty Company does hereby accept * * * the bill of sale in and to the property hereinbefore mentioned * * * and does hereby further agree to assume and pay all of the outstanding business debts and liabilities of the Bonneville Hotel Company, but does not assume or does not agree to pay any debt, judgment, claim or liability for tort or negligence that may exist, or be claimed against said The Bonneville Hotel Company."

Plaintiff apparently claims that the defendant assumed and agreed to pay the claims here involved for two reasons: (1) That all of the assets of the Bonneville Hotel Company were transferred to the defendant, and the defendant thereby, as matter of law, is liable for the payment of the obligations of the Bonneville Hotel Company, at least to the

extent of the property transferred; (2) that the defendant expressly assumed and agreed to pay plaintiff's claim by the language used in the contract of sale and purchase and in the receipt and release. The record before us does not show that all of the assets of the Bonneville Hotel Company were sold or transferred to the defendant. Apparently the only property sold and transferred was that used in connection with the operation of the Newhouse Hotel. The record is silent as to the amount of property owned by the Bonneville Hotel Company. It affirmatively appears that the Bonneville Hotel Company retained assets in the form of bills receivable of the face value of $5,420.48. Upon this record the defendant cannot be held liable for the payment of plaintiff's claim for attorney's fees independent of a contractual obligation to pay. Did the defendant expressly assume and agree to pay plaintiff's claim? The only debts and liabilities that defendant agreed to assume and pay were the outstanding business and trade debts and liabilities of the Bonneville Hotel Company. The contract of sale and purchase and the receipt and release expressly provide that defendant did not assume or agree to pay any debts or liabilities growing out of torts. While plaintiff's action is primarily based upon an alleged contract, the compensation which he claims in this action arises out of actions in tort. At the time the defendant assumed and agreed to pay the outstanding debts and liabilities of the Bonneville Hotel Company all of the actions growing out of the elevator accident had not been settled. So far as appears, the defendant took no part in the personal injury cases, or indeed that it knew of the existence of plaintiff's amended contract of employment. In the absence of oral testimony to aid the language of the contract of sale and purchase or the receipt and release, it cannot be said that the defendant assumed and agreed to pay plaintiff for services performed and to be performed in an amount equal to 10 per cent of any money which the Otis Elevator Company should pay to the persons injured in the elevator accident in settlement of

their claims. A claim founded upon such a contract is not necessarily an outstanding business debt or liability.

At the trial plaintiff proceeded and submitted his case upon the theory that his claim was necessarily included within the debts and liabilities that were assumed and agreed to be paid by the defendant. No oral testimony was offered to show that the defendant agreed to assume and pay his claim. Whether such testimony, if offered, should or should not be admitted in evidence is not before us for review, and therefore we express no opinion concerning the same.

Appellant has assigned and argued other claimed errors, but the conclusions we have reached make it unnecessary to decide them. From what has been said it follows that the judgment appealed from must be reversed. Such is the order. The cause is remanded to the district court of Salt Lake county, with directions to take such further proceedings not inconsistent herewith as may be deemed proper. Appellant is awarded its costs.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.