### In the Matter of Carl E. WESTMORELAND.

### No. 14498.

United States District Court
M. D. Georgia,
Macon Division.

May 4, 1967.

Richard A. Katz, Westmoreland & Patterson, Macon, Ga., for petitioner.

BOOTLE, Chief Judge:

This petition for review presents the question whether an attorney should be allowed a fee for representing a wage earner in a Chapter XIII Bankruptcy proceeding when one of the unsecured creditors filing a claim therein is an industrial loan company in which the attorney owns ⅓ of the stock, is a director and secretary-treasurer.

The creditor is Bankers Finance Company operating for pecuniary profit under the Georgia Industrial Loan Act. The wage earner is Alfred A. Dennis, Jr. Mr. Dennis, who had used Chapter XIII once before, came to Mr. Carl E. Westmoreland on this occasion because the former's cousin had been to Mr. Westmoreland under Chapter XIII a couple of times. Mr. Westmoreland, in discussing with Mr. Dennis the latter's financial affairs and upon discovering that Mr. Dennis owed Bankers $86.00, advised Mr. Dennis that he had stock in the

company and that he sometimes represented them too, and that if Dennis wanted to he could get another attorney. Thereupon Mr. Dennis told Mr. Westmoreland that he still wanted him to represent him and Mr. Westmoreland said he would. Bankers was listed in the schedules by Mr. Westmoreland as an unsecured creditor on a promissory note. The acceptance of the plan filed by Bankers according to its face was not filed by counsel and neither Mr. Westmoreland nor any member of his firm represented Bankers in this Chapter XIII proceeding.

The above facts appearing before the Referee, he decided that the interests of Mr. Dennis and Mr. Westmoreland were in fact hostile one to the other and that no attorney's fee should be allowed.

Additional background information may help in testing the Referee's ruling. This is not an isolated transaction, not a casual occurrence. The same question had arisen once before, in the Chapter XIII case of Osborne Kelly Crosby, No. 13961 before the same Referee and involving the same attorney and Bankers in the same relationships to each other and to the wage earner. The Referee wrote a 16 page opinion in that case expressing the same views and reaching the same conclusion as expressed and reached in his 10 page opinion in the instant case. The attorney explains his failure to petition for a review of the denial of his fee application in the Crosby case on the ground that Crosby's wage earner proceeding was converted into straight bankruptcy and that the conversion rendered the question moot. The same question involving the same attorney and Bankers in the same relationships to each other and to the wage earners is also pending before the same Referee in the case of Eugene Spikes, Jr., No. 14397 and again in the case of Leroy Williams, No. 14772, all to be controlled by the decision in this case.[1] Also, in the Referee's opinion in the Crosby case he points out that between August 6, 1965 and February 1, 1966 there were four other cases before him involving the same attorney and Bankers in the same relationship to each other and to the wage earners, namely: Dozier L. Jackson, No. 13379; Jessie L. Jackson, No. 13439; Caesar L. McDougald, No. 13689, and William J. Daniel, No. 13853. Moreover, in order to elucidate the non-episodic character of this occurrence and to show the probability of its recurrence this court takes judicial cognizance of facts gleaned from its dockets by the Clerk, at the court's request, namely, that over the last four calendar years in this division of this district 3,393 wage earner petitions were filed and that this attorney or his firm filed 1,165 of them.[2]

Counsel's request for oral argument upon this petition for review, in addition to their written briefs, was granted. At the oral argument Mr. Westmoreland furnished the following additional information. At the time of the Referee's decision now under review, he not only was interested in Bankers as above specified, but also owned a ⅓ stock interest in a similar company, Investors Loan Company of Dawson, Georgia, and subsequent to the Referee's decision he has sold all of his interest in these two companies to another stockholder and neither he nor any other member of his immediate family owns any interest in either of these companies or any other loan companies at this time.

This court is indebted to Referee Smith for his two exhaustive opinions on this question. His analysis of the facts as they relate to this particular type litigation points out with glaring clarity that there is a conflict of interest in being a creditor of a wage earner and in serving as that wage earner's attor-

---

1. Since the Referee's ruling in the instant case the Spikes proceeding has been dismissed for non payment of court costs. This probably renders the fee application in that case moot.

2. It would be a mistake to assume that Bankers' claims are always as small as $86.00. In Spikes it was $658.00; in Williams, $275.00; in Dozier L. Jackson, $1773.85; in Jessie L. Jackson, $141.00; in McDougald, $300.00, and in Daniel, $440.00.

ney in a Chapter XIII proceeding.[3] For instance, in his role as attorney he must advise the wage earner the relative advantages and disadvantages of a Chapter XIII proceeding as against straight bankruptcy. How can he do that when to advise straight bankruptcy would cost Bankers its interest? Assuming that the decision is to use Chapter XIII, the attorney must negotiate on behalf of his client with all creditors seeking for his client the acceptance of a plan as to weekly payments and their proration among creditors. Crucial here is the amount of such payments. It is to the advantage of debtor that he be left with a living remnant; it is to the advantage of all creditors that these payments be as large as possible. Questions may arise as to whether a claim is secured or unsecured. Once a plan is agreed upon and approved and for some reason the debtor fails to keep up his payments the question arises as to whether the case should be dismissed because of such failure. The conflict of interest is as real as it is apparent.

The authorities cited by the Referee amply support his conclusion. To keep this memorandum in due bounds we shall refer to only a few of them. We lift this language from Gillette v. Newhouse Realty Co., 75 Utah 13, 282 P. 776 (1929):

" * * * The rule that an attorney may not by his contract of employment place himself in a position where his own interests or the interests of another, whom he represents, conflict with the interests of his client, is founded upon principles of public policy. It is designed to serve various purposes, among them, to prevent the dishonest practitioner from fraudulent conduct, to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties or between his own interests and those of his client, to remove from the attorney any temptation which may tend to cause him to deviate from his duty of enforcing to the full extent the right of his client, to further the orderly administration of justice, and to foster respect for the profession and the courts." (at page 779).

We quote also from In re Buder, 358 Mo. 796, 217 S.W.2d 563 (1949):

" * * * We further hold that for reasons above stated, to preserve the orderly administration of justice and 'to preclude the honest practitioner from putting himself in a position where he may be required to choose between * * * his own interests and those of his client' an attorney may not by an employment place himself where he could contend for his own and against his client's financial interest and welfare. If an attorney should do that he would bring the courts and his profession into disrepute. (authorities cited) The fiduciary relationship of lawyer and client demands no less. It must exact no less." (at page 575).

▪ Canon Six of the Canons of Professional Ethics of the American Bar Association[4] goes to the heart of the

---

3. There can be no question that the attorney here in his role as ⅓ owner, director and secretary-treasurer of Bankers is virtually himself a creditor.

4. "Adverse Influences and Conflicting Interests.
    "It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.
    "It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

    "The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

matter with these words: "It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." One may wonder how "express" or how free and voluntary the "consent" of a wage earner is with his limited knowledge of courts and court proceedings, and with the economic pressure under which he labors when driven to a consideration of bankruptcy. Furthermore, "The canon does not sanction representation of conflicting interests in every case where such consent is given, but merely forbids it *except* in such cases * * *. There are * * * certain cases in which such representation is improper or at least unwise even with consent." Drinker, Legal Ethics (1953) p. 120. The rule would seem to apply with equal, or greater, pointedness where the attorney technically represents only one side, but has a personal interest which conflicts with the interest which he professionally represents. In Opinion 132 (March 15, 1935) rendered by the American Bar Association's Committee on Professional Ethics and Grievances it was decided that a client's "understanding of all the facts and his assent cannot justify a lawyer in allowing himself to occupy a position where self-interest tempts him to do less than his best for his client", and that "it cannot be proper for a lawyer to represent a client when the lawyer's own interests may tempt him to temper his efforts to promote to the utmost his client's interests."

The Supreme Court in Woods v. City Nat. Bank & T. Co., 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820, 825 (1941) makes it plain that claims for compensation for service rendered in a bankruptcy case may properly be disallowed where the claimants were serving dual or conflicting interests.

"Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted. Cf. Jackson v. Smith, 254 U.S. 586, 589, [41 S.Ct. 200, 65 L.Ed. 418, 424]. The principle enunciated by Chief Justice Taft in a case involving a contract to split fees in violation of the bankruptcy rules, is apposite here: 'What is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases.' Weil v. Neary, 278 U.S. 160, 173 [49 S.Ct. 144, 149, 73 L.Ed. 243, 250, 13 Am.Bankr.Rep., N.S., 96]. Furthermore, the incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation."

This petition for review was heard by both judges for this district and Judge Elliott authorizes this expression of his concurrence herein.

Accordingly, the ruling of the Referee is affirmed.