In re Mary C. PAINE, Bankrupt.

**Edward Reed BARTON,**
**Petitioner/Appellant,**

v.

**Joseph CHRYSLER, Trustee.**

**No. K80–907 CA.**

United States District Court,
W. D. Michigan, S. D.

Aug. 4, 1981.

Edward R. Barton, Allegan, Mich., pro se.

Robert J. Barnard, Kalamazoo, Mich., for petitioner/appellant.

David Davidoff, Kalamazoo, Mich., for trustee.

1. Order and Opinion dated March 25, 1981.

## OPINION

BENJAMIN F. GIBSON, District Judge.

The basic question in this case is whether a bankruptcy judge possesses the discretionary power to deny attorney fees *solely* upon the basis that the attorney's representation was subject to conflicting interests. Resolution of this question requires the Court to construe Bankruptcy Rule 219(c)(1); the rule enumerating criteria for awarding attorney fees. Appellant Barton (the attorney herein seeking compensation) makes the novel argument that the enumerated criteria establish the exclusive standards by which Bankruptcy judges are to exercise their discretion in awarding fees.

On July 16, 1980, United States Bankruptcy Judge Laurence E. Howard denied attorney Edward Barton's petition for attorney fees. Barton sought $1,313 in compensation under § 64(a) of the Bankruptcy Act (11 U.S.C. § 104) for professional services rendered on behalf of Mary Paine in her involuntary bankruptcy proceedings. Judge Howard found that Barton's coterminous representation of Paine and her unsecured creditors created a conflict of interest. He thereupon ruled that the conflict of interest deprived Barton of any right to compensation for which he was otherwise entitled to under the Act. Barton's claim for attorney fees was again denied following a rehearing on October 3, 1980.

Barton thereby obtained review by this Court of Judge Howard's refusal to award compensation for rendered services, arguing that Judge Howard abused his discretion under § 64(a) of the Bankruptcy Act. This Court affirmed Judge Howard's decision.[1] Barton subsequently petitioned this Court to reconsider its decision in light of the recent case of *In Re Devers*, 12 B.R. 40, 7 Bankr.Ct.Dec. 277, No. 80–2090 (D.D.C. 1981). This Court granted appellant's motion for reconsideration, requesting the parties to address *Devers* and the scope of §§ 329–330 of the Bankruptcy Act.

The factual background of this case is clear. Barton's legal services consisted of counseling Paine regarding impending collection suits and preparing schedules for Paine's involuntary bankruptcy proceeding. It is agreed by all parties that the fee Barton seeks is reasonable if viewed against the competency of the work performed and value of the services to the estate. Without more, Barton would clearly be entitled to the fee he seeks.

However, it develops that Barton acted as legal counsel to both Paine and her numerous unsecured creditors at the same time. This dual representation included the sensitive period of time in which Paine's schedules were prepared for the involuntary bankruptcy proceeding. Aggravating this situation is the fact that neither the parties nor the Court were properly informed of Barton's multiple representation.

As Judge Howard noted, Barton appeared to avoid every possible means of informing the Court. For example, Barton failed to file an appearance on behalf of Paine. Additionally, Barton did not sign, as Paine's attorney, those papers he prepared for her, such as the consent for adjudication and bankruptcy schedules. Finally, Barton failed to comply with the disclosure requirements of Bankruptcy Rule 219(b). This rule requires that attorneys reveal to the Court the nature of any legal fee arrangements with the bankrupt. The Court learned of Barton's representation of Paine only after setting a hearing date. Barton wrote the Court, stating "... I will not be in a position to represent Mrs. Paine as her attorney in these proceedings..." Although Barton apparently informed Paine of his dual role at some unspecified time, he admitted in the October 3, 1980 rehearing before the Bankruptcy Court that he has never revealed his relationship with Paine to her creditors.

It was this scenario that prompted Judge Howard to find that Barton's representa-tion of Paine was subject to ethical improprieties, specifically, a serious conflict of interest.[2] Judge Howard thereupon ruled that the conflict of interest existent in Barton's representation of Paine precluded Barton from receiving compensation under § 64(a) of the Bankruptcy Act. Barton again challenges this ruling as an abuse of discretion. He now contends that the Bankruptcy Court must award attorney fees on the basis of time, nature, extent and value of services rendered. The success of his argument depends upon a narrow construction of Bankruptcy Rule 219(c)(1).

The Court begins its analysis by setting out the statutory language of § 64 empowering the Bankruptcy Court to award fees to the Bankrupt's attorney. § 64 provides in relevant part:

> The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; ... and one *reasonable* attorney's fee, for the professional services actually rendered. (Emphasis added.)

This in turn is supplemented by Bankruptcy Rule 219(c)(1) which states as follows:

> (c) Factors in Allowing Compensation
>
> (1) *GENERAL* The compensation allowable by the court to a[n] ... attorney ... *entitled* to compensation for services rendered in the administration of a bankrupt estate shall be reasonable, *and in making allowances the court shall give due consideration* to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors. (Emphasis added.)

Initially, the Court observes that the rule was not written in terms which indicate that the enumerated standards were intended to be exclusive. To this Court the words

---

2. Barton also raises the additional argument that there was not an *actual* conflict of interest. However, his own letter to Judge Howard admitted the same. Moreover, this Court is satis-fied that Judge Howard's determination is supported by sufficient evidence. For a further discussion, refer to this Court's earlier Order and Opinion of March 25, 1981.

"... due consideration ..." suggest only that the criteria be referred to *when appropriate.*

Nonetheless, Barton places great emphasis upon the absence of any express language in Rule 219 establishing ethical improprieties as a criterion in determining the reasonableness of attorney fees. In other words, Barton relies upon the maxim *expressio unius est exclusio alterius* (that which is expressed puts an end to that which is implied).

The *Devers* Court adopted precisely such an approach when construing § 329–330 of the Bankruptcy Code. Because the language between § 330 and Rule 219(c)(1) is very similar, Barton cites *Devers* as persuasive authority. The facts are also similar in that *Devers* involved a bankruptcy judge who ordered the refund or cancellation of legal fees charged clients in connection with bankruptcy cases. The bankruptcy judge ordered the refund/cancellation after determining that the attorney was guilty of numerous ethical improprieties. The district court, reversing the bankruptcy judge, held that:

> However broad his discretion, it is obvious that when a Bankruptcy Judge examines fees under Section 329, *he must in fact examine the fees in relation to the value of services performed . . . the criteria include time, nature, extent and value of services rendered* as well as the cost of comparable services other than a case under the Bankruptcy Code. The Bankruptcy Judge erred when he determined that the value of the services performed in all thirty-eight cases was zero *solely* because Devers engaged in unethical conduct.

> .    .    .    .    .

> The cancellation of the fees was nothing more than a penalty for violation of the Code of Professional Responsibility. The Bankruptcy Judge is without *statutory* authority for assessing such a penalty. *Devers,* 142, 7 Bankr.Ct.Dec. 279, (Citations omitted, emphasis added)

■ This Court, however, is not convinced that the criteria laid out in Rule 219(c)(1) are exclusive. The reasoning represented by the maxim *expressio unius est exclusio alterius* has recognized limits of applicability. The maxim looses its persuasive force where its application would construe a statute against well established tenets of common law or invade public policy. The maxim's qualifications recognize that if Congress were to desire such substantial shifts in the law, it would say so expressly. Moreover,

> ... where an expanded interpretation will accomplish beneficial results, serve the purpose for which the statute was enacted ... or is the established custom, usage, or practice, the maxim will be disregarded and an expanded meaning given. C. Sands, Sutherland Statutory Construction § 47.25 (4th ed. 1973) (Citations omitted.)

The Court's inquiry therefore shifts to determining whether an "expanded meaning" is appropriate.

■ It was established at common law by the Seventeenth Century that an attorney must not represent opposing interests. *Shire v. King,* Yelverton 32. Anonymous, 7 Modern 47. The usual consequence of violating this principle has been that the attorney is debarred from receiving any fee. *Silbiger v. Prudence Bonds Corporation,* 180 F.2d 917, 920 (2nd Cir. 1950). It is a doctrine that has been applied with great severity. Thus, the Courts will not allow the attorney to demonstrate that the conflict of loyalties had no influence upon his conduct, nor that in fact his labors were successful. Put succinctly, "when an actual conflict of interest exists, no more need be shown ... to support a denial of compensation." *Woods v. City Nat. Bank & Trust,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941).

One Court has explained that the policy behind the "fee penalty" is that of preventing

> the dishonest practitioner from [engaging in] fraudulent conduct, to preclude the honest practitioner from putting himself in a position where he may be required to

choose between conflicting duties... *Gillette v. Newhouse Realty Co.*, 75 Utah 13, 282 P. 776, 779 (1929).

In other words, the penalty serves a prophylactic purpose. It strikes not only at actual evil, but at the tendency of divided loyalty to create evil. *Weil v. Neary*, 278 U.S. 160, 173, 49 S.Ct. 144, 149, 73 L.Ed. 243 (1929).

The Court's analysis would not be complete without discussing the strong public interest in compensating bankruptcy attorneys. Proper compensation includes balancing the goal of setting fees high enough to attract competent members of the bar while doing justice to the debtor and his creditors. *Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir. 1977); *Jacobowitz v. Double Seven Corporation*, 378 F.2d 405 (9th Cir. 1967). The Court fails to see, however, how the goal of attracting competent attorneys is harmed by refusing to compensate attorneys whose services were subject to conflicting interests. Indeed the denial of fees in such circumstances can only further aid the effort of attracting and maintaining a competent bankruptcy bar. The Court also notes that, under similar circumstances, the Supreme Court and numerous lower courts have expressed a strong federal policy against attorneys representing conflicting interests. See, e. g.; *Woods v. City Nat. Bank & Trust Co.*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941); *Weil v. Neary*, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243 (1929); *Silbiger v. Prudence Bonds Corporation*, 180 F.2d 917 (2nd Cir. 1959); *Crites Inc. v. Prudential Ins. Co.*, 134 F.2d 925 (6th Cir. 1943); *Gesellschaft Fur Drahtlose Telegraphic M.B.H. v. Brown*, 78 F.2d 410 (D.C. Cir. 1935); *In Re Westmoreland*, 270 F.Supp. 408 (1967); *De Korwin v. First National Bank of Chicago*, 155 F.Supp. 302 (1957). But cf. *New York, N.H. & H.R. Co. v. Iannotti*, 567 F.2d 166 (2nd Cir. 1977).

Finally, the Court notes that awarding fees to attorneys whose representation was subject to conflicting interests would have the undesirable effect of undermining public confidence in the integrity of the judicial process, particularly regarding bankruptcy proceedings. At common law such conduct would clearly preclude the attorney from enforcing a claim for compensation, here the bankruptcy court must exact no less. This Court agrees with the view expressed by the Supreme Court that

> ... allowance for "reasonable compensation" for "services rendered" *necessarily* implies "loyal and disinterested service in the interest of the persons" for whom the claimant purported to Act. *American United Mutual Life Ins. Co. v. City of Avon Park*, 311 U.S. 138, 147, 61 S.Ct. 157, 162, 85 L.Ed. 91 (1940) citing *In re Paramount-Publix Corp.*, D.C., 12 F.Supp. 823, 828. (Emphasis added.)

Therefore, for the reasons stated above, this Court holds that the criteria enumerated in Bankruptcy Rule 219(c)(1) are nonexclusive. It is evident that those standards expressed in the Rule are to be referred to only *when appropriate*. Whether an attorney is *entitled* to compensation is a question to be resolved by standards including, but not limited to, those specifically expressed in the Rule. Furthermore, the Court specifically holds that Rule 219(c)(1) empowers a bankruptcy judge to determine, as a matter of law, that an attorney is not entitled to compensation for legal services found to have been subject to conflicting interests. It is therefore quite clear to this Court that U.S. Bankruptcy Judge Laurence E. Howard was within his sound discretion when he refused to award attorney fees to Edward Barton. Accordingly, the Court affirms its previous order and opinion affirming Judge Howard's October 3, 1980 ruling.

IT IS SO ORDERED.