## In re RITZ CARLTON RESTAURANT & HOTEL CO. OF ATLANTIC CITY.

### No. 28776.

District Court, D. New Jersey.

May 19, 1945.

Bergerman & Hourwich, of New York City, for Real Estate Bondholders Protective Committee and pro se.

Rosenberg, Goldmark & Colin, of New York City, for Walter Nestel, indenture trustee, and pro se.

Hannold & Hannold, of Woodbury, N. J., for executrix of estate of Alexander L. Rogers, successor indenture trustee.

Pilgrim & Ritger, of Newark, N. J., pro se.

Charles C. Trelease, of Newark, N. J., for Burnett & Trelease.

Sundheim, Folz, Kamsler & Goodis, of Philadelphia, Pa., pro se.

Charles A. Wolverton, of Camden, N. J., pro se.

Alfred E. Driscoll, of Camden, N. J., trustee, pro se.

Thomas L. Gaskill, of Camden, N. J., special master, pro se.

George Zolotar, by Kiva Berke, both of New York City, for Securities and Exchange Commission.

FORMAN, District Judge.

Petitions have been filed herein for the allowance of fees and disbursements pursuant to the authority contained in the provisions of the Bankruptcy Act, 11 U.S.C.A. §§ 641–650, inclusive. The Securities and Exchange Commission has presented an analysis of the applications and arguments have been heard thereon pro and con.

A plan of reorganization of the debtor has been submitted and approved by this court. The first mortgage bondholders alone will participate in the plan. Under the provisions of the plan the bonds presently outstanding in the amount of $3,523,000 will be exchanged for common stock in the new company (one share of stock for each $100 in principal amount of bonds).

The first mortgage bond issue was created by the debtor on, July 1, 1923, in the principal amount of $5,500,000. S. W. Straus & Co. underwrote the issue. The debtor, with the aid of this company, was able to make payments on principal and interest until 1931 by which time the bond issue was reduced to $3,523,000. Upon default under the terms of the mortgage the property was placed in the possession of an Indenture Trustee. Said trustee took possession in August of 1931 and commenced to operate the Ritz Carlton properties. Proceedings to foreclose the mortgage were instituted by the Indenture Trustee in February of 1932. The following month a bondholders committee, formed by S. W. Straus & Co. and consisting of its officers and appointees, resigned. The Real Estate Bondholders Protective Committee, known also as the Roosevelt Committee and hereinafter referred to as the "Committee," succeeded the Straus Committee. The Indenture Trustee Nicholas Roberts, the president of

S. W. Straus & Co., also resigned and was replaced by Walter Nestel, an employee of George E. Roosevelt, the chairman of the Committee. The property was managed by the Reliance Property Management Company at this time. Later a management contract was entered into with the National Hotel Management Company which agreed to manage the hotel and to advance money necessary to maintain its credit.

Tax arrears owed to the City of Atlantic City presented a problem in view of the passage of the Stout Act in New Jersey, N.J.S.A., App. A:4–1, which permitted a municipality to have a receiver appointed for the property. A lease was executed in 1934 with William Malamut for a period of five years, providing for a payment of $25,000 upon execution and a fixed rental in an amount equal in the aggregate of current taxes, insurance premiums, payment of $15,000 a year in advance to be paid to trade creditors and a percentage of the gross receipts for the four months of the summer season. As a result it was possible to reach an agreement with the City of Atlantic City whereby it waived its rights under the Stout Act for five years.

The Bankers Securities Corporation, which owned or controlled approximately 38% of the first mortgage bonds outstanding, objected to the Malamut lease, among other reasons, because the rent was inadequate. It filed a bill in equity in this court seeking a cancellation of the lease and the removal of the Indenture Trustee. The suit went to trial and the lease was not ordered to be cancelled. However, as a result of this litigation the Indenture Trustee Nestel was removed. In directing such action the court commented:

"No dishonesty of any character has been shown, but the trustee has not in any way exercised his own judgment with relation to the matters of the trusteeship. He has acted only as a rubber stamp to put into effect the decisions of the Committee, without questioning their judgment."

The court further stated:

"This conclusion is not based upon any charge of dishonesty, but upon a failure to fully and competently execute the duties of his trust." Opinion of Judge Avis filed in this court, in the case of Bankers Securities Corp. v. Nestel, Trustee, E-4984, on November 4, 1936.[1]

---

[1] No opinion for publication.

Alexander L. Rogers, now deceased, was appointed Successor Indenture Trustee by the court.

The Committee attempted to persuade the debtor to initiate reorganization proceedings under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, about this time but was unsuccessful. The Committee, working together with William Malamut, the lessee, devised a plan to reorganize the debtor, whereby the latter would acquire control of the voting stock of the debtor which he would then turn over to the Committee, which would then cause a petition for reorganization to be filed by the debtor. Under this plan, all of the stock of a new corporation to be formed would have been owned by Malamut and the claims of the first mortgage bondholders would have been cut approximately 50%, in return for Malamut's promise to provide funds for reorganization expenses and taxes. The petition was filed on September 16, 1937. It was attacked by the Bankers Securities Corporation as not presented in good faith because of the arrangement between the Committee and Malamut.

Nevertheless, the petition was approved by this court and the Bankers Securities Corporation appealed to the Circuit Court of Appeals which reversed the order of this court and directed the dismissal of the petition.

Following the mandate of the Circuit Court of Appeals, issued in May of 1938, a new petition of reorganization was filed in this court on June 20, 1938. The court approved the petition and appointed the Successor Indenture Trustee Rogers as temporary trustee in the proceedings. Various objections to this petition were made by the Bankers Securities Corporation, and questions were raised as to whether the then recently enacted Chandler Act, 11 U.S.C.A. § 1 et seq., was applicable and whether the appointment of the Successor Indenture Trustee Rogers as temporary trustee was that of a disinterested trustee. The district court, 24 F.Supp. 78, declined to sustain the objections and the Bankers Securities Corporation again appealed. The Circuit Court of Appeals, 99 F.2d 51, reversed the district court and directed proceedings in accordance with the provisions of Chapter X of the Chandler Act, 11 U.S.C.A. § 501 et seq. On January 17, 1939, the Committee procured Successor Indenture Rogers to file a petition for re-

organization under Chapter X. The order of the court approving this petition included the appointment of Alfred E. Driscoll as trustee of the debtor. This petition was likewise attacked by the Bankers Securities Corporation, but the objections were cured by an agreement of the parties and the petition upon which the present proceedings are based was amended by the order of this court on March 10, 1939.

A claim was filed in the present reorganization proceedings for $1,856,052.60 on behalf of the receiver of S. W. Straus & Co., the house of issue of the first mortgage bonds, which was alleged to represent cash advanced by this company for the account of the debtor and used to acquire first mortgage bonds at their maturities. The receiver claimed a right to the security of the first mortgage on a parity with the other outstanding first mortgage bonds amounting to $3,523,000. The Committee and the Bankers Securities Corporation filed objections to the claim and hearings were had on it before this court, which later referred the matter to Referee Thomas L. Gaskill, appointed as special master for these proceedings. A trial was had before the special master who rendered an opinion in favor of the objectors and against the receiver of S. W. Straus & Co. Before the report of the special master could be approved by the court, negotiations looking toward a settlement were commenced and the claim was finally compromised, with the approval of the court, for the sum of $2,000.

The property was operated by Malamut under the lease until October of 1939, several months after the filing of the present petition for reorganization. Negotiations were commenced about that time for a renewal of the lease with Malamut. It was agreed that the lease should be for a short term in order that a reorganization might be consummated about the time when a new lease would begin.

Malamut made an offer to the Trustee Driscoll to conclude a lease for three years, which guaranteed a new rental of $25,000 for the entire term, in addition to the payment of taxes, insurance and other charges, totaling approximately $73,000 a year, plus rent for the summer months at 20% of the gross hotel business during that period.

The Bankers Securities Corporation appeared in opposition to the Malamut offer, which, it claimed, was inadequate, and pre-

sented an offer of Albert M. Greenfield, of that corporation, which would have netted the trustee $20,000 per year for the rental of the hotel, plus taxes, insurance and like charges, and, in addition, 20% of the gross business during the summer months, with a guaranteed minimum gross rent of $90,000.

The offer submitted by the Bankers Securities Corporation was met by Malamut who raised his earlier offer substantially. This resulted in his final agreement to pay approximately $17,000 per year more than the offer first approved and submitted to the court by the trustee.

In June of 1942 the government took possession of the hotel property in its program of using this area in Atlantic City as a training center for the Army Air Forces.

The hotel property was operated under the second Malamut renewal lease until approximately four months before its date of expiration. The lease with the government was not approved until June of 1943. During the government's occupancy of the premises various problems arose, the more important of which follow: the claim of Malamut who felt that he had certain rights because of dispossession prior to the end of his term, sundry questions concerning the government's occupancy, a disposition on the part of the government to withdraw from the premises, tax difficulties with the City of Atlantic City, and claims and problems with respect to insurance. These problems were eventually settled satisfactorily.

A plan of reorganization has been presented by Trustee Driscoll and was approved by the court on November 24, 1944.

We will deal with each petition for allowance individually:

1. *Real Estate Bondholders Protective Committee.*

This Committee was organized by the first mortgage bondholders and commenced its activities in March of 1932. A petition has been filed on its behalf for services from that time to date in the sum of $26,000 and for reimbursement of its expenses in the sum of $52,621.28.

The Committee was instrumental in negotiations leading up to the leasing of the property at various times and participated in activities which dealt with many problems of the hotel, as for example, the tax situation with the City of Atlantic City, the claim of the receiver of the S. W. Straus & Co. and the Malamut claim. It also participated in the plans and conferences which led up to the filing of the various reorganization petitions in this court, two of which it unsuccessfully attempted to support in the Circuit Court of Appeals. In addition, it operated an office from which it relayed information to the bondholders, which information was in the form of approximately a score of published reports.

The Securities and Exchange Commission made two principal objections against the application of the Committee: First, it submitted that the Committee was not entitled to any compensation for its activities up to 1937 for the reason that during such time Indenture Trustee Nestel, was acting for, and at the instance of, the Committee without exercising his own judgment. Secondly, that certain disbursements claimed by the Committee are not compensable.

On the first point we turn to the case of Bankers Securities Corporation v. Walter Nestel, Trustee, supra, in which the late Judge Avis of this court considered allegations that the conduct of Indenture Trustee Nestel in handling the property involved was detrimental to the interest of the bondholders and that the Committee exercised an influence over the trustee in directing his policies so that the trustee only nominally managed the property while the Committee had the actual management in its hands, resulting in large losses due to mismanagement. In the opinion filed in that case Judge Avis held:

"The more important question is whether the trustees should be removed. Without going into detail, I am satisfied that the trustee is too closely allied with the Roosevelt Committee to act independently. No dishonesty of any character has been shown, but the trustee has not in any way exercised his own judgment in relation to the matters of the trusteeship. He has acted only as a rubber stamp to put into effect the decisions of the Committee, without questioning their judgment. A trustee of this character should be entirely independent in action, for the benefit of all the bondholders, regardless of whether they have deposited their bonds with a committee or are still holding them in possession. The Committee's power or authority does not extend beyond the rights of the individual bondholders, and their

collective rights and interests are represented by the trustee who stands in a fiduciary capacity as such representative. He cannot delegate his duties to a committee.

"I am convinced that the trustee has so executed his duties as to require the Court to remove him or to permit him to resign. * * *"

No question can be raised against the opinion of Judge Avis as expressed above. It amply demonstrated that a conflict of interests actually existed between the Committee and the Indenture Trustee.

In such a situation the United States Supreme Court has held that compensation may not be awarded. In the case of Woods v. City Bank Co., 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820, that Court made the following cogent comments:

"The indenture trustee represents all the bondholders; the committee those who have given it authorizations—in this case about 50 per cent. Where the interests of majorities and minorities do not coincide, the interests of the indenture trustee and the committee will tend to be antagonistic. Beyond that is the fact that an indenture trustee closely affiliated with a committee shares the committee's conflicts of interest." 312 U.S. at pages 266, 267, 61 S.Ct. at page 496, 85 L.Ed. 820.

"Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted. * * * Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation." 312 U.S. at page 268, 61 S.Ct. at page 497, 85 L.Ed. 820.

"Protective committees, as well as indenture trustees, are fiduciaries. (Cases cited.) A fiduciary who represents security holders in a reorganization may not perfect his claim to compensation by insisting that, although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one. Only strict adherence to these equitable principles can keep the standard of conduct for fiduciaries 'at a level higher than that trodden by the crowd.' See Mr. Justice Cardozo in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1." 312

U.S. at pages 268, 269, 61 S.Ct. at page 497, 85 L.Ed. 820.

■ Since the Committee was the controlling instrumentality that caused the conduct of Indenture Trustee Nestel to be considered incompatible with his fiduciary relationship and since the Committee itself was chargeable as a fiduciary, it follows that its claim for services up to the time of removal of Indenture Trustee Nestel must be denied.

The other point upon which the Securities and Exchange Commission objects concerns disbursements made by the Committee in the aggregate sum of $11,685.49. Included in this amount were three items, namely:

| | |
|---|---:|
| Payroll of clerical staff | $ 7,406.88 |
| Office Rent | 2,581.07 |
| Telephone | 602.07 |
| Total | $10,590.02 |

A supplementary affidavit has been filed by Wadsworth Garfield, Secretary of the Committee, concerning these three items and the court has seen the voluminous accounts kept by the Committee, a complete audit of which would entail expense unwarranted by the amount of the items to which objection has been made. A month to month allocation of the entire expenses of all of the issues handled by the Committee during the complete period of time was made. The over all expenses amounted to $122,587.36. All of the issues involved were given a value of approximately $35,-000,000. The bonds of the debtor in this case were valued at $1,000,000. The Ritz Carlton issue is the sole survivor in the Committee's files and hence had to bear the burden of allocation of expense during a longer period of time than any other issue. Of course an acceptance of the evaluation of this and the other issues must be on an arbitrary basis because again a review of those evaluations would entail disproportionate costs. The evaluation for purpose of expense of $1,000,000 placed on the Ritz Carlton issue seems fair. The same appraisers who evaluated this issue also evaluated all the others. The fact that the total share of the expenses allocated to the Ritz Carlton for the entire 13-year period amounted to only about ⅓ of 1% of the principal amount of the bonds and that the annual average share of these bonds was charged at the rate of $814.61, or on an

average monthly basis of $67.88, would likewise seem to indicate a reasonably fair expense allocation.

■ In the light of the results and the lack of any reason behind the objection to the allowance of these expenses, the system used seems to have been fair, reliable and logical. We will not sustain the objection to the three items of expenses totalling $10,590.02.

Three other items to which exception was taken by the Securities and Exchange Commission are as follows:

Root, Clark, Buckner & Ballantine,
   Stenographic Services ......... $150.85
Rosenberg, Goldmark & Colin,
   Postage and Carfare .......... 101.48
Overtime Meals and Conferences.. 93.14
    Total ..................... $345.47

These items are of an extraordinary nature, justification of which is dubious or not shown. They will be disallowed.

■ The final item in this record to which objection was made by the securities and Exchange Commission was the sum of $750 to cover "total estimated future expense." It will also be disallowed as such need not be anticipated. If, as and when expenses are actually incurred they may be the subject of a further allowance.

A review of the proceedings indicates that the judgment of the Committee was not always of the best. This view, however, is easy to take now in the retrospect of hindsight. No bad faith involving the element of carelessness can be charged to the Committee and it did serve the purpose of contact with thousands of bondholders by correspondence and afforded many of them personal interviews concerning the status of the proceedings.

■ Counsel for the Bankers Securities Corporation joined the Securities and Exchange Commission in objecting to the request of the Committee for the sum of $26,000 for services. We agree that the request for this allowance under all of the circumstances is excessive and we find that a fair and reasonable award for the services of the Committee extending over the period from the date of the resignation of Indenture Trustee Nestel to the present, which contributed to the reorganization and were beneficial in the administration of the estate, will be the sum of $10,000.

In addition to the allowance for services we will allow reimbursement for expenses as requested in the petition, namely, $52,621.28, with the exception of the extraordinary items totalling $345.47 and the item of $750 for future expenses, or a net allowance for expenses in the sum of $51,525.81.

### 2. Walter Nestel, Indenture Trustee.

In discussing the application of the Committee we have adverted to its relationship with Walter Nestel, Indenture Trustee, in whose behalf an application has been made for a fee of $5,000, and our comment concerning the court's finding with regard to his fiduciary status applies to this application.

■ This petitioner held the office of Indenture Trustee from June 24, 1932, until May 21, 1937, at which time he resigned because he was found not to be a disinterested trustee within the purview of the Bankruptcy Act, 11 U.S.C.A. § 556, and the decision of the Supreme Court in the case of Woods v. City Bank Co., supra. His petition for compensation will be disallowed.

### 3. Rosenberg, Goldmark & Colin, Attorneys for Walter Nestel.

■ The petitioner applies for an allowance of $25,000, as attorneys for the Indenture Trustee, Walter Nestel. The same reason for the disallowance of the petition for services rendered by the Committee and Walter Nestel applies to the application of the attorneys for this Indenture Trustee, and their petition for an allowance will likewise be disallowed.

### 4. Estate of Alexander L. Rogers, Successor Indenture Trustee.

Grace C. Rogers, as Executrix of Alexander L. Rogers, has filed a petition claiming allowance for services by the decedent in the sum of $10,062.50 and for reimbursement of his expenses in the amount of $1,277.36. He was named on May 24, 1937, as Successor Indenture Trustee following Walter Nestel in that office. He served until his death on October 12, 1944.

His services were of a formal nature, consisting mainly of making payments to general creditors from time to time. Very little work was done in connection with the operation of the hotel property.

During his lifetime he paid to his own account funds as compensation on account of his services in the amount of $2,180.

868

He also paid himself for expenses as Successor Indenture Trustee the sum of $1,-277.36.

█ The amount of $2,180 which the Successor Indenture Trustee allowed to himself adequately compensated him for his services and the sum of $1,277.36 with which he reimbursed himself repaid in full his expenses. Such payments will be approved, but the petition for further allowance of fees and expenses will be denied.

5. *Bergerman & Hourwich, for Itself and as Successors to the Firm of Rosenberg, Goldmark & Colin, as Attorneys of the Committee.*

The firm of Bergerman & Hourwich has filed a petition asking for an allowance in the sum of $70,000 for services rendered to the Committee. This firm came into existence on January 1, 1943. Mr. Bergerman while associated in the firm of Rosenberg, Goldmark & Colin performed services for the Committee from the year 1932 until and through the year 1942. Thereafter he served the Committee through the firm of Bergerman & Hourwich. Various associates collaborated with him during the over all period. In a supplementary statement filed herein on May 10, 1945, signed by the firms of Bergerman & Hourwich and Rosenberg, Goldmark & Colin, they have evidenced their agreement that any compensation granted on the petition of Bergerman & Hourwich will be distributed between the two firms and received in full discharge of the claims of both of them as counsel for the Committee.

We have already held that neither the Committee, the Indenture Trustee Nestel, nor Rosenberg, Goldmark & Colin as attorneys for him, is entitled to be compensated in view of the decision in the case of Woods v. City Bank Co., supra. In so far as the application of Bergerman & Hourwich concerns itself with services rendered to the Committee until the date of the resignation of the Indenture Trustee Nestel, the decision has like applicability and compensation for such services cannot be awarded. Until May 21, 1937, the date that Indenture Trustee Nestel resigned, inconsistent relationship existed between the Committee and the Indenture Trustee, and the representation by counsel was similarly affected.

However, important service was rendered by petitioner as representative of the Committee after the resignation of Indenture Trustee Nestel. Petitioner represented the Committee in many reorganizations and brought the fruits of its abundant experience to this estate, including that gained in the reorganization of large hotel interests in Atlantic City. We will not attempt to list petitioner's services in detail. Among other services rendered resulting in direct and indirect benefits to the estate, we include such areas of work as participation in the filing of the petition for reorganization in 1937 and legal services throughout that proceeding, including an appeal thereof in the Third Circuit Court of Appeals. Although unsuccessful in sustaining the petition the services had some value since they contributed at least to giving a form of action to the administration of the property. We feel compensable services were rendered in the second reorganization litigation and in the work of petitioner of originating, exploring and presenting various reorganization plans.

The petitioner also participated with effect in dealing with claims for and against the trustee appointed herein in 1939. The principal of these was the defense entered to the claim made by Fink, Successor Receiver for S. W. Straus & Co., Inc. There activities are fully described by petitioner in its application. The denial of this claim and subsequent settlement thereof for the nominal sum of $2,000 was undoubtedly an important conservation of this estate. Of course, others participated in the proceedings, but it cannot be denied that the petitioner played an important role in the defense set up against the claim.

Other negotiations on claims in important fields were the disposition of the Malamut claim, the trustee's claim against the government and claims for damages covered by insurance policies. In these petitioner likewise rendered effective service. Other negotiations of importance in which the petitioner participated included the negotiation of the renewal lease with the tenant Malamut, the subsequent lease with the United States Government and the various ramifications arising therefrom.

The petitioner, in addition, directed its services naturally to advising and counseling its immediate principal, the Committee. Its service in this respect is considered by us as practically of a continuous nature since May 21, 1937. The normal service consisted of advising the Committee with reference to correspondence and deposi-

tors, and attendance at practically all conferences concerning the hotel property. Its services were also extraordinary in nature, as for instance, extension of the deposit agreement and similar matters.

■ We have reflected an allowance for the year to year work performed by the petitioner since May 21, 1937, and the special services rendered by it, and conclude a reasonable allowance for all of these services, consistent with its contribution to the ultimate plan of reorganization and its benefits in the administration of the estate, will be the sum of $26,500.

### 6. Pilgrim & Ritger, Attorneys for Walter Nestel and Alexander L. Rogers.

This firm was attorney of record for Indenture Trustee Nestel and his Successor Indenture Trustee Rogers. It worked in cooperation with Rosenberg, Goldmark & Colin and its services consisted of the filing and serving of the necessary papers in the foreclosure proceeding which was commenced and proceeded to the point where a decree pro confesso was entered, whereupon the suit was enjoined. For this and other services rendered to Indenture Trustee Nestel it claims the sum of $2,500. It also claims for services to Alexander L. Rogers as Successor Indenture Trustee the sum of $500, as well as the sum of $2,500 for services rendered to Indenture Trustee Walter Nestel in the suit brought against him by Bankers Securities Corporation, amounting in all to $5,500.

■ The last mentioned litigation was in defense of the position of Indenture Trustee Nestel heretofore discussed and in which he was replaced by the late Alexander L. Rogers as Successor Indenture Trustee. We have heretofore enlarged upon the proposition that services in behalf of Indenture Trustee Nestel are not, in our judgment, compensable. The petitioner may be compensated only for its services to the Successor Indenture Trustee Rogers, and therefore an allowance limited to the sum of $500 will be granted.

### 7. Burnett & Trelease, Attorneys for the Debtor.

■ The work of this petitioner extended from July 1937 to April 1940. It was retained by the debtor as New Jersey counsel and it assisted in the proceedings under Chapter X, advised on the preparation of tax returns, served various papers, made court appearances and handled the usual correspondence. In effect its activities dovetailed with the efforts of the Committee which really controlled the debtor. Petitioner applies for the sum of $5,000, but an allowance of $1,000 will be made.

### 8. Sundheim, Folz, Kamsler & Goodis, Attorneys for the Creditor, Bankers Securities Corporation.

The petitioner appeared for the Bankers Securities Corporation, a substantial creditor of the estate. It applied for the sum of $25,000 as a fee and $1,168.21 as reimbursement for costs incurred by it. The activities of petitioner in behalf of the administration of the estate and its contribution to the ultimate plan of reorganization which resulted therefrom consisted mainly of its successful opposition to the Committee. Its objections to the original Malamut lease and the Indenture Trustee, Walter Nestel, resulted in the resignation of the latter. Its objections to the first two reorganization proceedings were sustained on appeals prosecuted in the Circuit Court of Appeals. As a consequence of these decisions, the arrangements, whereby William Malamut would have acquired ownership of the hotel property and the equity of the bondholders would have been dismissed approximately 50%, were defeated. Petitioner's persistent objections contributed largely to the form of the reorganization under Chapter X and it participated importantly in the negotiations and plans which led to the confirmation of the present plan of reorganization.

Together with the attorneys for the Committee it carried the burden of trying the claim of Fink, Receiver of S. W. Straus & Co., which resulted in its defeat and a nominal settlement, eminently satisfactory. Its objection to the renewal of the Malamut lease and the offers which it made on behalf of its client to lease the property, made it possible to consummate a renewal lease with Malamut upon a rental per year substantially higher than his original offer and thus effected a decided annual increase in the income of the estate.

Objections were also made to the Malamut claim which resulted in their settlement at a saving to the debtor.

It appeared in the tax hearings at a time when the City of Atlantic City could have taken advantage of the provisions of the Stout Act of New Jersey and added its weight to that of others to avert a tax re-

870

ceivership of the debtor which would have been calamitous. Its efforts showed constant supervision and scrutiny of all the activities of the debtor. While these services were in the nature of enlightened self-interest in behalf of its client, they formed a type of loyal opposition that continued a constant surveillance over the affairs of the debtor and which contributed effectively to the architecture of the ultimate plan of reorganization and substantial benefit to the estate.

■■■ A reasonable allowance for these services will be $17,750. Expenses in the amount of $1,168.21, as set forth in the petition, will be allowed. There is reflected in the fee allowed above, the sum advanced by petitioner to its New Jersey counsel of record in the sum of $250.

9. *Charles A. Wolverton, New Jersey Attorney for the Creditor, Bankers Securities Corporation.*

■■■ This petitioner was engaged on September 22, 1937, as the attorney of record in behalf of the Bankers Securities Corporation and he has acted in that capacity up to the present time. His services consisted of the usual filing, service and transmittal of papers and formal court appearances. He has had a retainer of $250 from his Philadelphia correspondent and a reasonable allowance for his services is an additional sum of $750.

10. *Alfred E. Driscoll, Trustee.*

■■■ The trustee took office in January of 1939 and has continued to serve the estate since that time. During the first three years of his tenure the hotel was in the hands of the lessee and managerial problems were at a minimum. However, from the time the hotel property was taken over by the government, which is presently in possession, the trustee has been compelled to assume numerous duties which heretofore were handled by the lessee.

His services consisted mainly of the original investigation of the property and the financial condition of the debtor, extensive negotiations and problems which led ultimately to the leasing of the property, the operation of the business and management of the property during the government lease, the negotiations with the City of Atlantic City with reference to the tax arrears and the successful avoidance of foreclosure upon the part of the City, other tax claims of the federal and state governments, the settlement of the claims of the Ambassador Hotel and the Guarantee Trust Company, the problems of storage, personal property assessment, insurance settlements, payroll, preparation of tax and other government departmental forms, disbursements, and the preparation, filing and consummation of the plan of reorganization.

The trustee requests the sum of $60,000 as a fee and $6,719.91 as reimbursement for expenses paid by him. The services of the trustee were substantial in nature and the benefits to the estate derived therefrom were many. Since the trustee is a competent lawyer no counsel was appointed for him and the estate is not confronted with a separate application for counsel fees. He is a member of a leading law firm and his associate or associates were called upon for frequent service.

We have reflected in our allowance month to month service by the trustee, himself, or that furnished by him. This we have considered in periods of approximately thirty months each, the first comprising the earlier portion of his service during the operation of the property by the tenant Malamut and the second during the tenancy of the government.

We have also reflected the large number of special services enumerated at the head of this discussion. The most notable of these which inured maximum benefits to the estate consisted of the services rendered in the adjustment of the claim of the City of Atlantic City for taxes and the enormous amount of negotiations and attention involved in the execution of the government lease. The trustee has demonstrated consummate skill and ability in conserving the best interests of the estate and in marshaling the support of the divergent interests so as to consummate the reorganization scheme to the vest advantage of the estate.

A reasonable allowance for these services will be made in the amount of $35,000. This figure includes the amount already received by the trustee, i. e., $2,500. Disbursements will also be granted in the amount of $6,719.91.

11. *Thomas L. Gaskill, Special Master.*

The special master appointed by this court heard the claim of the S. W. Straus & Co. for $1,856,052.60. Many days were consumed in the hearing and he prepared a 99-page report embodying his findings.

His services were commended and his request for an allowance of $3,000 was approved by a number of the parties who appeared before him. No opposition was registered to it. His petition for $3,000 will be granted. This figure includes the sum of $1,000 already received by him.

An order should be presented by the trustee in conformity with this opinion.

Recapitulation of Allowances

| | | Amount Requested | | Amount Allowed | |
|---|---|---|---|---|---|
| | | Fees | Disbursements | Fees | Disbursements |
| 1. | Real Estate Bondholders Protective Committee | $ 26,000.00 | $52,621.28 | $10,000.00 | $51,525.81 |
| 2. | Walter Nestel, Indenture Trustee | 5,000.00 | 0 | 0 | 0 |
| 3. | Rosenberg, Goldmark & Colin, Attorneys for Walter Nestel | 25,000.00 | 0 | 0 | 0 |
| 4. | Estate of Alexander L. Rogers, Successor Indenture Trustee | 10,062.50[1] | 1,277.36[2] | 2,180.00[2] | 1,277.36[2] |
| 5. | Bergerman & Hourwich, Attorneys for Real Estate Bondholders Protective Committee | 70,000.00 | 0 | 26,500.00 | 0 |
| 6. | Pilgrim & Ritger, Attorneys for Walter Nestel and Alexander L. Rogers | 5,500.00 | 0 | 500.00 | 0 |
| 7. | Burnett & Trelease, Attorneys for Debtor | 5,000.00 | 0 | 1,000.00 | 0 |
| 8. | Sundheim, Folz, Kamsler & Goodis, Attorneys for creditor Bankers Securities Corporation | 25,000.00 | 1,168.21 | 17,750.00 | 1,168.21 |
| 9. | Charles A. Wolverton, Attorney for Bankers Securities Corporation | 2,500.00 | 0 | 750.00 | 0 |
| 10. | Alfred E. Driscoll, Trustee. | 60,000.00[3] | 6,719.91 | 35,000.00[3] | 6,719.91 |
| 11. | Thomas L. Gaskill, Special Master | 3,000.00[4] | 0 | 3,000.00[4] | 0 |
| | Total | $237,062.50 | $61,786.76 | $97,180.00 | $60,691.29 |

[1] Includes the sum of $2180 which was received by decedent.
[2] This amount was received by the decedent.
[3] Includes the sum of $2500 which was received.
[4] Includes the sum of $1000 which was received.