WOODS, COURT TRUSTEE, *v.* CITY NATIONAL BANK AND TRUST CO. OF CHICAGO ET AL.

Nos. 281 and 282. Argued January 13, 1941.—Decided February 3, 1941.

*Mr. Weightstill Woods* for petitioner.

*Mr. Vincent O'Brien,* with whom *Mr. Tracy Wilson Buckingham* was on the brief, for respondents.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The basic question involved in this case concerns the power of the District Court in proceedings under Ch. X of the Chandler Act[1] (52 Stat. 840) to disallow claims for compensation and reimbursement on the grounds that the claimants were serving dual or conflicting interests. The claimants, respondents here, are an indenture trustee, a bondholders' committee, and the committee's counsel.

---

[1] This reorganization started with foreclosure proceedings in the Illinois state court and later was transferred to the United States District Court upon the filing of petitions under § 77B of the Bankruptcy Act. Pursuant to § 276 (c) (2) of the Chandler Act, the bankruptcy court made that chapter applicable to the allowance of these claims. The claims under review cover not only the proceedings under § 77B but also the earlier state court proceedings. Though some of the allowances here in issue apparently had been fixed by the state court prior to the transfer of the proceedings to bankruptcy, respondents agreed to submit the claims *de novo* to the District Court.

Counsel to the committee was also counsel to the indenture trustee; and its services in the latter capacity were included in the claim of the indenture trustee. The bankruptcy trustee appeared in opposition to the allowance of these claims, and counterclaimed against the indenture trustee seeking to surcharge it for various alleged acts of misconduct and negligence. The indenture trustee answered. There was a hearing on the claims and on the counterclaim. The District Court disallowed the claims "for want of equity"; and allowed the counterclaim only as a recoupment to extinguish any claims of respondents. On appeal the Circuit Court of Appeals reversed. 111 F. 2d 834. It held that there was no conspiracy to defraud, nor substantial evidence of mismanagement or negligence on the part of respondent-trustee. It thereupon remanded the cause to the District Court, indicating that the out-of-pocket expenses should be allowed in full and that the reasonable and customary charge for services so rendered should govern the claims for compensation. We granted the petition for writs of certiorari [2] in view of the importance in reorganization proceedings of the power of the District Court over such allowances.

We are not inclined to question the conclusion of the Circuit Court of Appeals on the issue of fraud. We agree with it that on this record recovery on the counterclaim would not be warranted. But we do not believe it was justified in disregarding the evidence and findings of fact as respects respondents' dual or conflicting interests in this reorganization.

---

[2] The two cases raise the same question. One represents an appeal to the Circuit Court of Appeals as of right; the other an appeal with leave. They were taken prior to our decision in *Dickinson Industrial Site* v. *Cowan,* 309 U. S. 382. And see *Reconstruction Finance Corp.* v. *Prudence Securities Advisory Group,* 311 U. S. 579.

The property here involved is an apartment hotel—Granada Apartments, Inc. A committee was formed by the respondent-trustee [3] to represent the first mortgage bonds in the reorganization. It was composed of five members. Two of these were officers or employees of one of the principal underwriters of the bonds.[4] This underwriter was heavily interested in the equity.[5] So far as appears, that fact was not disclosed when the committee solicited the bondholders. In any event, the equity owner is peculiarly ill-suited to represent the mortgagee in these situations because of their historic clash of interests. See *Case* v. *Los Angeles Lumber Products Co.*, 308 U. S. 106. Furthermore, a rather serious question was raised early in this reorganization concerning alleged misrepresentations by the underwriters on the sale of the bonds that the furnishings of the hotel were covered by the mortgage. It turned out that they were not; and bondholders' money was used to satisfy the lien outstanding against them.[6] Objective scrutiny and full en-

---

[3] Not then the trustee under the indenture.

[4] A third member was also a distributor of the bonds when they were publicly offered.

[5] This underwriter—Cody Trust Co.—went into receivership in December, 1933, the Granada bondholders' committee having been formed in April, 1933. The District Court found that nominees of Cody Trust Co. operated the property until January, 1934.

The reorganization began with a foreclosure proceeding in the state court. The indenture trustee, predecessor of respondent trustee, later took possession and employed a so-called agent at $50 per month "to keep Cody Trust Company informed as to the status from time to time."

[6] Certain phases of the litigation involving this question are revealed in *Thuma* v. *Granada Hotel Corp.*, 269 Ill. App. 484; *Wenstrand* v. *Pick & Co.*, 38 F. 2d 25; *In re Granada Apartments, Inc.*, 104 F. 2d 528.

So far as appears no effort was made in this reorganization to assert any claim against the underwriters.

forcement of an underwriter's liability requires a committee freed from that underwriter's influence.

The committee was closely affiliated with the respondent-trustee, which, as we have noted, caused its formation. And respondent-trustee was in turn later appointed as successor trustee under the mortgage on petition of the committee. The committee had as its two most active members officers of the indenture trustee. It was in substance a part of the indenture trustee's reorganization division.[7] The indenture trustee was the committee's depositary; it would receive any fees accruing to the committee. Indenture trustees themselves have frequently condemned such entanglements with committees.[8] The indenture trustee represents all the bondholders; the committee those who have given it authorizations—in this case about 50 per cent. Where the interests of majorities and minorities do not coincide, the interests of the indenture trustee and the committee will tend to be antagonistic.[9] Beyond that is the fact

---

[7] That division had handled over 400 reorganizations, having been formed to act in connection with defaulted bond issues underwritten by Chicago Trust Co. and Central Trust Co. of Illinois. Chicago Trust Co. was one of the underwriters of the Granada bonds.

[8] Utter, Problems of Trustees Under Defaulted Bond Issues, 56 Trust Companies 653 (1933); Littleton, Administration Problems Under Corporate Trusteeship, id., 335, 338.

[9] Utter, op. cit. supra note 8, pp. 656–657. That antagonism was best illustrated in foreclosure reorganizations where the minority was not bound to accept new securities but could insist on cash. See Weiner, Conflicting Functions of the Upset Price in a Corporate Reorganization, 27 Col. L. Rev. 132. In the instant case the reorganization proceeding was in the state court from June, 1930 when a receiver under the second mortgage was appointed to May, 1937 when petitions under § 77B of the Bankruptcy Act were approved. For an earlier and unsuccessful attempt to place this company under § 77B see Tuttle v. Harris, 297 U. S. 225. Respondent-indenture trustee became such in January, 1935. It was in possession from then until May, 1937.

that an indenture trustee closely affiliated with a committee shares the committee's conflicts of interest.

In this case the indenture trustee was also indenture trustee for neighboring apartment properties and dominated the committees representing the bonds of those other companies. Two members of respondent committee were also members of one of those other committees. There was no unitary plan of reorganization for these several properties. But there were dealings between them by their common representatives—dealings attacked by petitioner as unfair to the instant company and defended by respondents as fair.

That is not all.

Counsel to the committee was not only counsel to the indenture trustee in this reorganization; it was also counsel to the indenture trustee and the committees for the neighboring properties. And respondent-counsel had acted as general counsel for one of the two principal underwriters [10] during the fianancing of the property here involved; and that underwriter's prospectus was under attack in these proceedings.[11]

Under Ch. X of the Chandler Act the bankruptcy court has plenary power to review all fees and expenses in connection with the reorganization from whatever source they may be payable.[12] Reasonable compensation for

---

[10] Chicago Trust Co., which was also the original indenture trustee.

[11] Respondent-counsel denies that it acted as counsel in that particular transaction or knew of the alleged misrepresentation in the prospectus at the time, and asserts that it did not learn of the contents of the circular until a question was raised concerning it during this reorganization proceeding. We accept its version of the facts.

[12] Sec. 221 (4) provides: "The judge shall confirm a plan if satisfied that . . . all payments made or promised by the debtor or by a corporation issuing securities or acquiring property under the plan or by any other person, for services and for costs and expenses in, or in connection with, the proceeding or in connection with the plan

services rendered may be allowed.[13]  The claimant, however, has the burden of proving their worth.  Furthermore, "reasonable compensation for services rendered" necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act. *Amercian United Mutual Life Ins. Co. v. City of Avon Park,* 311 U. S. 138.  Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation.  It is no answer to say that fraud or unfairness were not shown to have resulted.  Cf. *Jackson v. Smith,* 254 U. S. 586, 589.  The principle enunciated by Chief Justice Taft in a case involving a contract to split fees in violation of the bankruptcy rules, is apposite here: "What is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases." *Weil v. Neary,* 278 U. S. 160, 173.  Furthermore, the incidence of a particular conflict of interest can seldom be measured with any degree of certainty.  The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent.  Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.

Protective committees, as well as indenture trustees, are fiduciaries.  *Bullard v. City of Cisco,* 290 U. S. 179;

---

and incident to the reorganization, have been fully disclosed to the judge and are reasonable or, if to be fixed after confirmation of the plan, will be subject to the approval of the judge; . . ."

[13] Indenture trustees, committees, and their attorneys are included among those to whom the compensation may be allowed.  § 242.

*Jewett* v. *Commonwealth Bond Corp.,* 241 App. Div. 131; 271 N. Y. S. 522; *Bergelt* v. *Roberts,* 144 Misc. 832; 258 N. Y. S. 905, aff'd 236 App. Div. 777; 258 N. Y. S. 1086; *Carter* v. *First Nat'l Bank,* 128 Md. 581; 98 A. 77. Cf. *Nichol* v. *Sensenbrenner,* 220 Wis. 165; 263 N. W. 650. A fiduciary who represents security holders in a reorganization may not perfect his claim to compensation by insisting that, although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one. Only strict adherence to these equitable principles can keep the standard of conduct for fiduciaries "at a level higher than that trodden by the crowd." See Mr. Justice Cardozo in *Meinhard* v. *Salmon,* 249 N. Y. 458, 464; 164 N. E. 545.

The findings of the District Court that these claimants represented conflicting interests are amply supported by the evidence.

Some discrimination, however, is necessary in applying the foregoing rule to claims for expenses. Reimbursement for "proper costs and expenses incurred in connection with the administration" of the estate may be allowed.[14] The rule disallowing compensation because of conflicting interests may be equally effective to bar recovery of the expenditures made by a claimant subject to conflicting interests. Plainly expenditures are not "proper" within the meaning of the Act where the claimant cannot show that they were made in furtherance of a project exclusively devoted to the interests of those whom the claimant purported to represent. On the other hand, those expenditures normally should be allowed which have clearly benefited the estate. Scott on Trusts (1939), § 245.1. Thus where taxes have been paid, needful repairs or additions to the property have been made, or the like, equity does not permit the estate

---

[14] § 242.

to retain those benefits without paying for them. Such classification of expenses, at times difficult, rests in the sound discretion of the bankruptcy court. The District Court drew no such distinction but proceeded on the theory that reimbursement for all expenses must be denied. But it is not apparent that all of them fall within the prohibited category.

The other points raised by petitioner are so plainly without merit that they do not warrant mention.

For the reasons stated we reverse the judgment of the Circuit Court of Appeals and remand the cause to the District Court for further proceedings in conformity with this opinion.

*Reversed.*