**In re GLOBAL MARINE, INC., Global Marine Drilling Company, Global Marine Deepwater Drilling Inc., Global Marine Australia Inc., Global Marine West Africa Inc., Global Marine Baltic Inc., Global Marine North Sea Inc., Challenger Minerals Inc., Global Marine Adriatic Inc., Global Marine Bismark Sea Inc., Global Marine Nautilus Inc., Global Marine Development Inc.,**

**GMI International Finance N.V., and Global Marine Corporate Services, Inc., Debtors, Jointly Administered.**

**Bankruptcy Nos. 86–00771–H2–11 to 86–00782–H2–11, 86–01308–H2–11 and 86–11035–H2–11.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Sept. 28, 1987.

**1000**

D.J. Baker, Marta G. Andrews, Weil, Gotshal & Manges, Houston, Tex., for debtors.

Harvey S. Schochet, Christine A. Murphy, Jayne A. Peeters, Steefel, Levitt & Weiss, San Francisco, Cal., Daniel C. Stewart, Bill H. Brister, J. Maxwell Tucker, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., for MCCC Corp. and The Bank of New York.

Richard J. Tannenbaum, MCCC Corp., Stanford, Conn., David Mahle, Jane Sweeney, Emmett, Mervin & Martin, New York City, John L. King, Candace S. Shiffman, Fulbright & Jaworski, Houston, Tex., for Bank of America Syndicates.

Thad Grundy, Hutcheson & Grundy, Houston, Tex., Thomas J. Maloney, Cleary, Gottlieb, Steen & Hamilton, New York City, for Grindlays Syndicate.

Myron Sheinfeld, Henry Kaim, Sheinfeld, Maley & Kay, Houston, Tex., for the Official Creditors' Committee of Global Marine, Inc.

## MEMORANDUM OPINION

RANDOLPH F. WHELESS, Jr., Chief Judge.

This matter comes on as objections to the application of Weil, Gotshal & Manges for interim allowance of compensation.

Global Marine, Inc. ("GMI") and its 13 subsidiaries, including Global Marine Deepwater Drilling, Inc. ("GMDDI"), have commenced cases under Chapter 11. By Order of this Court, the cases were consolidated for administrative purposes and are being jointly administered. With the exception of Challenger Minerals, Inc., all the Debtors are being represented by the law firm of Weil, Gotshal & Manges ("WGM").

Interim fee applications and reimbursement of expenses for the 10 month period from January 1, 1986, through November 30, 1986, for approximately $2.4 million dollars was made by Debtors' attorneys, WGM. The following objections have been filed:

1) Grindlays Syndicate requests the Court exercise its discretion to grant interim compensation and require a 20% hold-back of any fees awarded;

2) MCCC Corp. and Bank of New York ("MCCC") request that all compensation be denied and that WGM be ordered to reimburse any retainers on the ground that WGM's dual representation of GMI and GMDDI constitutes an impermissable conflict of interest under § 327 of the Bankruptcy Code; and

3) Bank of America Syndicates adopts MCCC's objection.

GMI is a publicly-held, New York Stock Exchange-listed company, headquartered in Houston, Texas. It operates offshore drilling rigs world-wide and is one of the largest independent offshore contract drilling companies in the world. GMI is the parent holding company of all of the other Debtors. It does not carry on any operations in its own right, but rather such drilling operations are carried out by the various subsidiaries. GMI's primary assets consist of the stock in its subsidiaries.

The primary operating company within the corporate group of companies appears to be Global Marine Drilling Company ("GMDC"). GMDC operates all of the drilling rigs that are owned by the various subsidiaries of GMI. Accordingly, GMDC employees physically operate not only rigs owned or leased by GMDC, but also rigs owned or leased by all of the other subsidiaries of GMI. GMDC owns or leases fifteen of the thirty-two total rigs owned or leased by subsidiaries of GMI.

GMDDI and its two wholly owned subsidiaries, Global Marine Australia, Inc. and Global Marine West Africa, Inc., own twelve offshore drilling rigs. GMDDI alone owns seven of these rigs. All of these twelve rigs are operated for GMDDI

and its subsidiaries by GMDC. GMDDI appears to have no employees and carries on no operations in its own right and thus, appears simply to be a financing entity, the sole purpose of which is to hold title to the above-mentioned seven rigs. The same appears to be true with respect to GMDDI's two subsidiaries.

The subsidiaries of GMI appear to owe about $750 million in secured indebtedness which was borrowed to finance the purchase of drilling rigs. Almost all of such debt was guaranteed by GMI, in its capacity as parent of the various subsidiaries. In addition, GMI's schedules and statement of affairs show that it owes approximately $450 million in unsecured debt in respect of publicly-held debentures. Accordingly, GMI owes, either directly or through guarantees, approximately $1.2 billion to third-party creditors.

In addition to the debt owed to third-party creditors, GMI and its subsidiaries, including certain non-debtor subsidiaries, appear to owe one another approximately $1 billion dollars or more in so-called intercompany debt based on the schedules of liabilities of the Debtors. It is the Court's understanding that such intercompany debt represents corporate transfers of funds that occurred in the ordinary course of business, often over a number of years. GMI acted as the bank (effectively) and received funds, made disbursements, and maintained an accounting of what money went where.

One of the largest prepetition intercompany debts owed by GMI is owed to GMDDI, in the amount of approximately $170 million. It is the existence of this intercompany claim that MCCC urges constitutes an impermissable conflict of interest.

### The Issue of Conflict and Disqualification

The first issue is whether WGM should be disqualified from representation of GMI and/or GMDDI; although, MCCC has not specifically requested that WGM be removed, nor if removal were found to be appropriate whether WGM should be disqualified from representation of GMI or GMDDI, or both. There has been no "motion to disqualify", yet it is clear that the issue has been tried by express or implied consent of the parties and this Court will deal with it pursuant to Rule 15 of the Federal Rules of Civil Procedure.

MCCC argues that the simultaneous representation of the bankruptcy estates of GMI and its subsidiary, GMDDI, presents an immediate and irreconcilable conflict of interest and violates § 327(c) of the Bankruptcy Code.

Section 327(c) as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, provides that a professional person is not disqualified for employment solely because of that person's employment by or representation of a creditor unless there is an actual conflict of interest. 11 U.S.C. § 327(c) (emphasis added). Prior to the '84 Amendments this provision had specifically prohibited the concurrent representation of the debtor and a creditor irrespective of whether or not an actual conflict of interest existed.

MCCC argues that § 327(c) does not authorize dual representation of GMI and GMDDI. They argue that the section covers only the dual representation of a debtor (GMI) and a creditor of the debtor (GMDDI), not the representation of a debtor (GMDDI) and a debtor of the debtor (GMI), nor does it contemplate situations where both clients are debtors. As to the former point MCCC's distinction seems purely a matter of semantics which does not need to be addressed. Respecting the latter, the cases discussed below show that there is no prohibition against representation when both clients are debtors.

MCCC next argues that the dual representation of a controlled entity (GMDDI) and a controlling entity (GMI) creates an actual conflict. However, this blanket proscription against simultaneous representation does not appear to be accepted by the Fifth Circuit. In *In re Consolidated BancShares, Inc.*, 785 F.2d 1249 (5th Cir.1986), the court was presented with a request for denial of fees because of an

alleged actual conflict of interest where the debtor's counsel had also represented at least one director of the debtor. The court remanded for additional findings and conclusions with respect to the issue of whether the "dual representation created a legally disabling conflict of interest". *Consolidated BancShares*, 785 F.2d at 1256. This would imply that dual representation is not in and of itself an actual conflict of interest but that an actual conflict must be factually substantiated upon the evidentiary record. Accordingly, the court noted that, "of course, upon reconsideration, the bankruptcy court may adhere to its conclusion that in this case there was no conflict of interest." *Id.* at n. 7. Finally, MCCC argues that § 327(c) mandates disqualification of attorneys even in the relatively uncomplicated debtor-creditor situation if another creditor objects and an actual conflict exists. Furthermore, they state that case law establishes beyond question that representation of two Chapter 11 estates, when one estate has a claim against the other, is a clear, present, actual conflict of interest for joint counsel, quite apart from any nondisclosure or other ethical issues. MCCC cites the following as authority for this proposition:

1) *In re N.S. Garrott & Sons*, 63 B.R. 189 (Bankr.E.D.Ark.1986), involved the joint representation of two general partnerships being jointly administered whose equity security holders were different individuals. The partnerships farmed together although each owned land separately; and while each estate was jointly liable for some debts, each estate had different creditors as well. The court recognized that pursuant to § 327(c) "attorneys may have conflicts which are technical and nondisqualifying", which typically occur where multiple business entities are controlled by a single entity or person. *Garrott*, 63 B.R. at 192. The court found however, that this case was distinguishable in that "the two estates are separate legal entities whose equity security holders are different individuals". *Id.* Accordingly the court held that the existence of a prepetition debt from one estate to the other created a disqualifying conflict of interest and this

together with numerous other factors, including among others, a finding of exaggerated charges, resulted in their reducing attorneys' fees from $161,055 to $60,000.

The GMI and GMDDI estates have a unity of ownership and guaranteed obligations which, as the *Garrott* court implied, is very different from a situation wherein separately owned and clearly different entities with no connection other than the fact that some of the partners are related and the partnerships farmed together.

2) *In re Hoffman*, 53 B.R. 564 (Bankr.W. D.Ark.1985), involved the joint representation of a corporate debtor in possession and an individual equity security holder (50%) who was also a creditor of the debtor corporation. The court held a disqualifying conflict of interests existed as a result of the claim between the estates. The court cautioned however, that "[w]hether such an actual disqualifying conflict exists must be considered in light of the particular facts of each case." *Hoffman*, 53 B.R. at 566. It was also recognized that there were situations in which dual representation did not create a conflict situation and that this occurred in cases that were "complicated and involve multiple business entities which are owned by a single entity and which the court finds are impractical to untangle without unreasonable delay and expense." *Id.*

The *Hoffman* decision clearly does not stand for the proposition that a disqualifying conflict exists whenever there is dual representation. Quite to the contrary, the *Hoffman* court found that it would be "unreasonable and unnecessarily cumbersome to always require different counsel". *Id.* The unity of interest existing in this instance, unlike the mere overlapping interest found in *Hoffman*, together with the particular facts of this case more appropriately categorize this matter with those situations in which dual representation does not create a disqualifying conflict.

3) In *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160 (Bankr.D.Ariz. 1984) counsel represented two affiliated corporate debtors whose President and sole

shareholder were the same individual for both. There was an outstanding prepetition debt of $1.8 million. The court determined that the intercompany claims created actual conflicts of interests, but added that the "question is not whether a conflict exists, but whether that conflict is materially adverse to the estate, creditors or equity security holders." *Guy Apple*, 45 B.R. at 166. However, the real issue before this court involved the appropriate standard for entry of a nunc pro tunc order approving appointment of counsel for the debtor in possession. Ultimately, the court held that the lack of prejudice to the estate if creditors were paid 100% together with the ability to cure the conflict by appointment of special counsel overruled the conflict and allowed for approval of retention of counsel. The court denied all further fees until such time as a plan providing for 100% payment to creditors was confirmed and implemented as promised by counsel.

Contrary to MCCC's position, case law indicates that the presence of an intercompany claim does not create per se an actual conflict of interest. In *In re International Oil Company*, 427 F.2d 186 (2d Cir. 1970), the creditors of four affiliated corporations sought the reappointment, after adjudication, of the single trustee who had handled the debtors' failed Chap. XI arrangement. The court held that on the "meagre record" which only showed the existence of intercompany claims was not "sufficient to saddle these estates with the expense of separate trustees and trustees' attorneys at the present time." *International*, 427 F.2d at 187.

Similarly in *In re O.P.M. Leasing Services*, 16 B.R. 932 (Bankr.S.D.N.Y.1982), the court dealt with the issue of whether an intercompany claim between a subsidiary and parent corporation in separate reorganization cases prohibited the appointment of the same trustee in both cases. The court held, based on *International, supra,* that the fact that one corporation was a creditor to the other or that one corporation owned the stock of the other did not prevent the trustee "from being disinterested or constitute an impermissible conflict of interest." *O.P.M.*, 16 B.R. at 936.

The O.P.M. court was also faced with an alleged conflict resulting from the trustee's representation of both estates in a consolidated adversary proceeding where if successful, would require allocation of ownership interests amongst the competing bankruptcy estates. The court took the approach of waiting to see if the alleged conflict would become real and then dealing with it at such time, as was suggested in *Katz v. Kilsheimer*, 327 F.2d 633 (2d Cir.1964). In *Katz*, the court of appeals dealt with a disqualification motion of the trustee and their counsel who represented the corporate parent and its partly owned subsidiaries (also in bankruptcy) where intercompany claims existed. The court refused to adopt the strict view that the existence of intercompany claims would always require separate trustees and counsel, and explained that the court could "think of situations where the conflict between parent and subsidiary may be so intense and important that sound discretion would demand separate representation or, at the very least, the appointment of special counsel, ... even if the estate does not make this mandatory." *Katz*, 327 F.2d at 636. In this instance the court of appeals opted to take a wait and see approach so as to allow the trial court to proceed with a scheduled confirmation hearing, at which time if the issue had not resolved itself the removal issue could be renewed.

When the issue of a conflict of interests is alleged, the Fifth Circuit requires a "painstaking analyses of the facts and precise application of precedent." *Consolidated BancShares*, 785 F.2d at 1256; *Brennan's v. Brennan's Restaurant, Inc.*, 590 F.2d 168, 173–74 (5th Cir.1979). As guidance to the bankruptcy courts, the court of appeals points out that "the court should be guided by the principal that court-appointed attorneys are officers of the court, and fiduciaries, ... and the court must strictly apply the equitable principle that a fiduciary can only serve one master." *Consolidated BancShares*, 785 F.2d at 1256 n. 7 *citing Woods v. City National Bank*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941).

Precedent indicates that the mere existence of an intercompany claim does not in and of itself constitute an impermissible conflict of interest that would justify disqualification or denial of compensation. This Court believes there is a fundamental distinction between the "potentially" conflicting interests that may arise in every instance of joint representation and an "actual conflict of interest" as envisioned by § 327(c). The representation of entities with potentially conflicting interests does not violate § 327(c).

In this case the Debtors have effectively functioned as one enterprise which has been operated for the benefit of the whole, and during the course of WGM's representation of Debtors there has existed a unity of interest and singleness of purpose on the part of Debtors. Mr. Jerry Martin, Senior V.P. and Chief Financial Officer of GMI and V.P. of GMDDI, explained to this Court at the hearing held on February 4; 1987, that the extent of the interrelationship of GMI and its subsidiaries requires that only one group of attorneys handle things in order to avoid the needless waste of time and the expense involved in having to deal with fifteen different sets of attorneys. Mr. Martin explained that the nature of the relationships were such that "Global Marine is a shell and if I don't look after its subsidiaries and only look out for Global Marine I've got nothing. I've got to look after the good of every one of these subsidiaries in order to look after the good of Global Marine."

This Court also notes that MCCC has not shown any instance in which the dual representation has caused any injury to the estate of GMDDI.

The Court is not unmindful that MCCC has a motion currently pending before this Court seeking the creation of an Official Unsecured Creditors Committee for GMDDI. This action has been opposed by WGM as well as by this Court which does not feel that the proliferation of creditors' committees would be of benefit to the administration of Debtors' estates at this point.

■ The Court also notes that WGM's representation of Debtors went unchallenged by MCCC on a formal basis until after WGM filed its 2nd Interim Fee Application which is almost one year since WGM began its representation of Debtors. However, because disqualification is a matter of ethical, not legal, considerations, we cannot permit a party's delay in moving for disqualification to justify a continued breach. *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341 (5th Cir.1981).

■ This Court acknowledges that there is a potential for conflict; however, the mere existence of the intercompany claim between GMI and GMDDI does not at this point elevate the situation to one of an actual conflict of interest requiring the disqualification of WGM from representing either GMI and/or GMDDI. In the instance of one subsidiary, Challenger Minerals, Inc., this Court has authorized the retention of separate counsel due to the different nature of their business when compared to the other subsidiaries. Should the conflict between GMI and GMDDI become open and ongoing as opposed to dormant, the problem may at such time be resolved by among others, the appointment of special counsel as suggested by the 2nd Circuit in *Katz*, supra. To act at this time in a preemptive manner would only result in the interruption of the orderly administration of these Debtors' bankruptcy proceedings and cause them to incur unnecessary expense.

It is therefore, ORDERED, that the application to disqualify WGM as counsel to GMI and/or GMDDI is DENIED, without prejudice to the renewal of this motion at such time as an actual conflict of interest may be shown.

### *"Conflict" and the Award of Fees*

Turning now to the issue of fees, the Bankruptcy Code requires that in order for an attorney to be employed by the debtor's estate he must be disinterested and may not hold or represent an interest adverse to the estate. 11 U.S.C. §§ 101(13), 327(a).

The requirement of disinterestedness appears broad enough to include anyone

who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code.... Indirect or remote associations or affiliations, as well as direct, may engender conflicting loyalties. The purpose of the rule is to prevent even the emergence of a conflict irrespective of the integrity of the person under consideration.

*Consolidated BancShares*, 785 F.2d at 1256 (quoting 2 Collier on Bankruptcy § 327.03 at 327–19, 20 [15th ed. 1985]).

On the issue of conflicts of interests, the United States Supreme Court, in a 1941 reorganization case under Chapter X of the Chandler Act dealing with the disallowance of claims for compensation filed by an indenture trustee, a bondholders' committee, and counsel representing them both, stated that:

Where a claimant ... was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted.

*Woods v. City National Bank, supra*, 312 U.S. at 268, 61 S.Ct. at 497.

In *Woods*, the Supreme Court indicated that it is not necessary for the bankruptcy court to speculate as to the extent or result of a conflict, "[w]here an actual conflict of interests exists, no more need be shown in this type of case to support a denial of compensation." *Id.*

■ In an effort to discover what constitutes a conflict of interests some bankruptcy courts have looked to the respective state's code of professional responsibility in defining this term. *See, e.g., In re Porter*, 52 B.R. 692, 698–699 (Bankr.E.D.Va.1985); *In re Roberts*, 46 B.R. 815, 830–833 (Bankr. D.Utah 1985).

Disciplinary Rule 5–105 states:

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

Tex.Rev.Civ.Stat.Ann., Government Code Title 2, Subtitle G App., art. 10 § 9, DR 5–105 (Vernon 1973 & Supp.1986).

DR 5–105 contemplates multiple representations in those limited circumstances when an attorney can in good faith adequately represent both parties and only after there has been full and effective disclosure and consent of each client.

There is no question that in this instance there has been full disclosure and consent of the parties. The intercompany account receivable has been on the record and is not disputed by the parties. At the February 4th hearing, Mr. Martin confirmed the clients' knowledge and acceptance of dual representation stating "I think it is extremely important that it [WGM] represent Global Marine, Inc., and all of its subsidiaries because this thing is so closely tied together it would be a disaster both from keeping information straight and from cost to do it any other way." When asked if he felt that WGM had in any way been compromised by the dual representation of GMI and its subsidiaries Mr. Martin responded "I certainly don't feel they have, no."

As to the adequate representation of both parties, the value of WGM's services has not been challenged nor has MCCC been able to point out any specific demonstrable negative or prejudicial effect that has resulted from WGM's representation of GMI and GMDDI.

■ In certain circumstances a client may be able to consent to or perhaps waive an objection to a violation under Canon 5, however, he is precluded by the courts in which lies the responsibility of weighing the appearance of professional impropriety

forbidden by Canon 9. *Cf. Corrugated Container*, 659 F.2d at 1349.

■■■ Canon 9 provides: "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." Government Code Title 2, Subtitle G App., Canon 9. The test to determine if there has been a violation is, first, the movant must show that a specifically identifiable impropriety has occurred or will occur, and second, that the likelihood of public suspicion outweighs the social interest in obtaining counsel of one's choice. *Corrugated Container*, 659 F.2d at 1345–1348. Furthermore, in order to find a violation of Canon 9, "the impropriety must be clear and must be one that would be recognized by all reasonable persons." *Guy Apple*, 45 B.R. at 168. The first part of the test would be satisfied by the breach of Canon 5 which this Court does not find in this instance, nor has movant otherwise met its burden. Additionally, the viability of Canon 9 in the present situation seems to have been limited. Congress appears to have carved out an exception to the "appearance of impropriety" standard with the promulgation of the '84 amendments of §§ 327(c) and 1103(b) of the Bankruptcy Code which permit dual representation under certain circumstances.

■■■ Opinions are divided on whether a bankruptcy court may deny or reduce compensation based on the violation of professional ethics. *See, e.g., In re Devers*, 12 B.R. 140 (Dist.Ct.D.C.1981) (Held a bankruptcy judge is without statutory authority to assess a penalty for a violation of the Code of Professional Responsibility.); *In re Paine*, 14 B.R. 272 (Bankr.W.D.Mich.1981) (Held bankruptcy courts have inherent power to assess a penalty for a violation of professional canons notwithstanding the absence of express statutory authority.). This Court believes that ethical violations are relevant to a fee determination. However, in this instance this Court has not found a violation of any professional canon.

■■■ The Bankruptcy Code provides that "the court may deny allowance of compensation for services and reimbursement of expenses of a professional person ... if, at any time during such professional person's employment ... such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c).

The legislative history indicates that this "subsection provides a penalty for conflicts of interest." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 329 (1977), S.Rep. No. 95–989, 95th Cong., 2nd Sess. 39 (1978) U.S. Code Cong. & Admin.News pp. 5787, 5825, 5963, 6285 *reprinted in* 4 Norton Bankr.L. & Prac.Legis.Hist. Sec. 328(c) at 730 (1986).

The language of § 328(c) however, states that the court "may", not that the court "shall" deny allowance of compensation, indicating that this section vests a bankruptcy judge with the discretionary power to deny all compensation or to deny that portion of fees relating to any improper conduct.

■■■ The general rule appears to be that an actual conflict of interests results in all fees being denied. *Woods, supra*, 312 U.S. 262, 61 S.Ct. 493. A number of courts have adhered to this general rule and denied all fees when a conflict of interest existed. *See, e.g., In re Georgetown of Kettering, Ltd.*, 750 F.2d 536 (6th Cir. 1984); *In re Chou–Chen Chemicals, Inc.*, 31 B.R. 842 (Bankr.W.D.Ky.1983); *In re Paine*, 14 B.R. 272 (Bankr.W.D.Mich.1981). In recent years the general rule established by *Woods* has not been applied in cases where the need for attorney discipline is outweighed by the equities in the case. *In re GHR Energy Corp.*, 60 B.R. 52 (Bankr. S.D.Tex.1985); *In re Watson Seafood & Poultry Co.*, 40 B.R. 436, 440 (Bankr.E.D. N.C.1984). This Court, in consideration of the language of § 328(c), adheres to this latter approach which balances, on a case by case basis, the benefits to the bankruptcy estate and creditors against the effects of an actual conflict.

■■■ In this case the Court finds that WGM's dual representation of GMI and GMDDI does not result in an actual conflict of interests which would necessitate reduction or denial of WGM's fees.

Therefore, it is further ORDERED, that the present application for denial or reduction of WGM's interim compensation and reimbursement of expenses as requested in WGM's First and Second Application for Interim Compensation, and for reimbursement of retainers is DENIED, and the Court will otherwise consider the fee applications on their merits and reserves the issue of hold-back until such time.