In re **PROFESSIONAL DEVELOPMENT CORPORATION, a Tennessee Corporation, d/b/a Whispering Oaks Condominiums, Westwind Apartments, Willow Grove Shopping Center, QR Centers, Inc., Debtor.**

In re **Thomas H. CAMPBELL, d/b/a Hi–Tech Leasing, Debtor.**

**Bankruptcy Nos. 90–31484–D, 90–31483–D.**

United States Bankruptcy Court, W.D. Tennessee, W.D.

June 21, 1991.

Madelyn Scott, Asst. U.S. Trustee, Memphis, Tenn.

Jennie D. Latta, William M. Larsha, Jr., McDonnell Boyd, Memphis, Tenn., for Professional Dev. Corp.

Thomas Fulton, Memphis, Tenn., for Renwood Dev. Properties.

Steve Ragland, Memphis, Tenn., for First American Nat. Bank.

William Denton, Memphis, Tenn., for Hartford Ins. Co., Memphis Counsel.

William E. Chapman, III, Daniel, Coker, Horton, & Bell, P.A., Jackson, Miss., for Hartford Ins. Co., Jackson, Tennessee Counsel.

## MEMORANDUM OPINION AND ORDER ON MOTION TO DISQUALIFY ATTORNEY

BERNICE BOUIE DONALD, Bankruptcy Judge.

This core proceeding[1] came on for hearing on motion of the United States Trustee ("UST") seeking, inter alia, an order disqualifying attorneys for Debtors in Possession from representing both estates. As grounds, the UST's alleges numerous actual and potential conflicts of interest. The debtors in possession, Professional Development Corporation ("PDC") and Thomas H. Campbell ("THC" or "Mr. Campbell") aver that no real conflict of interest exists. Counsel argues that assuming arguendo, a conflict did exist, such conflict of interest between debtor entities would not warrant disqualification, as it would not cause counsel to cease to be disinterested, nor would it cause counsel to possess a interest adverse to the debtor. See 11 U.S.C. § 101(13). The following shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FINDINGS OF FACT

1. PDC and Mr. Campbell filed voluntary petitions under Chapter 11 of the Bankruptcy Code on December 14, 1990.

2. These cases are currently being jointly administered. No substantive consolidation has been ordered.

3. The law firm of McDonnell Boyd ("Counsel") represents PDC and Thomas H. Campbell, d/b/a Hi Tech Leasing.

---

1. 28 U.S.C. § 157(b)(2)(A).

4. Additionally, the following facts were alleged in the UST's motion and established at trial:

(a) Mr. Campbell's personal company, Campbell Properties, now known as Campbell Management Company, has been using Professional Development Corporation ("PDC") space without compensating PDC for the use of said space. Campbell Management will begin paying PDC $422.50 per month for the use of this space.[2]

(b) In 1990 PDC paid expenses in the approximate amount of $8,417.40 for the use of Mr. Campbell's duplex in Vail, Colorado. While Mr. Campbell testified that PDC used the condominium solely for business purposes, Mrs. Campbell testified the use was primarily personal.

(c) Testimony at trial revealed that some $87,000 was taken from Mr. Campbell's personal safety deposit box and deposited into PDC accounts on the assumption that the monies accumulated therein were actually funds of PDC. It appears that the $87,000 was deposited into several accounts and eventually transferred into PDC accounts.

(d) Upon information, it appears that on September 25, 1990, PDC transferred $100,000 worth of property to the law firm of Glassman, Jeter for services regarding litigation against Caroma, Hartford, Ohio Casualty, Universal Steel and Mississippi Lien. If the lawsuits are successful, Thomas H. Campbell will benefit personally from this representation.

(e) PDC'S schedules list Thomas H. Campbell as an unsecured creditor with an indebtedness of $278,377.78 or approximately 26% of PDC's total unsecured debt.

(f) Thomas H. Campbell's Schedule A–3 lists $278,377.78 as due and owing from Professional Development Corporation. It has been asserted that these funds were characterized incorrectly in the schedules and should have been shown as capital contributions.[3]

(g) Mr. Thomas Campbell testified at his meeting of creditors that PDC has been paying his expenses in the past without issuing him a W–2 form.

## QUESTION PRESENTED

The question for judicial determination is whether the existence of an actual or potential conflict of interest between debtor entities, where one debtor is the sole shareholder of the other debtor, is sufficient to prohibit the simultaneous representation by counsel of both debtors' entities.

## DISCUSSION

Employment of "professional persons" in Chapter 11 cases is governed by 11 U.S.C. § 327(a) of the Bankruptcy Code, which provides in relevant part:

**Employment of professional persons.**

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

A trustee[4] may select its own attorney without interference from creditors. See *In re Microwave Products of America, Inc.*, 104 B.R. 900,903 (Bankr. W.D.Tenn.1989); *In re Market Response Group, Inc.*, 6 CBC2d 685, 20 B.R. 151 (Bankr.E.D.Mich.1982). However, the selection of counsel is subject to court approval. 11 U.S.C. § 327(a). The court must always safeguard the integrity of the

---

**2.** Campbell Management will begin paying PDC $422.50 per month for the use of this space. However, there has been no provision payment of back rent to PDC.

**3.** Debtor avers that amended schedules have been filed.

**4.** 11 U.S.C. § 1107 ("... a debtor in possession shall have all the rights ... and powers ... of a trustee....".).

bankruptcy process, thereby inspiring confidence in the system. Consequently, Congress specifically mandated that the estate may employ only disinterested persons that do not have or represent an interest adverse to the estate.[5]

In the instant case, at first glance it appears that counsel passes the test under 11 U.S.C. § 101(13)(A) thru (D). However, close scrutiny of 11 U.S.C. § 101(13)(E) reveals a problematic situation. This section provides that a person is not "disinterested" if the person has "an interest materially adverse to the interest of the estate ..." Judge Kennedy in *In re Gardner's Mill-work Company,* unpublished opinion, Case No. 89-26417-K (W.D.Tenn. Dec. 12, 1989) opined:

> This subsection "appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independence and impartial attitude required by the Code." 2 *Collier On Bankruptcy,* Para. 327.03, p. 327-30 (15th ed.); see also, e.g., *In re Roger J. Au & Sons, Inc.,* 65 B.R. 322 (Bankr.Ct.N.D.Ohio 1984). *Indirect or remote associations, or affiliations, as well as direct, may engender conflicting loyalties.* Cf. § 327(e), which authorizes the trustee (or debtor in possession) to employ for a special purpose, other than representations of the trustee (or debtor in possession) in the overall bankruptcy case, an attorney that has represented the debtor, if such attorney does not represent or hold any adverse interest to the estate and if such appointment is in the best interest of the estate. (Emphasis added)

Generally speaking, the existence of a conflict of interest should be resolved in favor of disqualification. *In re Whitney-Forbes, Inc.,* 31 B.R. 836, 838-39 (Bankr.Ct.N.D.Illinois 1983). *It is not sufficient that an attorney actually be disinterested. The appearance of being disinterested also must be preserved.* Canon 9 of the Code of Professional Responsibility provides: "A lawyer should avoid even the appearance of professional impropriety. Public suspicion is a consideration." See, e.g. *Kraft, Inc. v. Alton Box Board Co.,* 659 F.2d 1341, 1348 (5th Cir.1981). (Emphasis added)

Counsel correctly notes that "[T]he American Bar Association disciplinary rule DR5-105(c) allows an attorney to represent multiple clients if he can adequately represent each and if each consents after full disclosure" citing inter alia *In re Global Marine, Inc.,* 108 B.R. 998 (Bankr. S.D.Tenn.1987).

The *Global Marine* Court reasoned that DR5-105 contemplates multiple representation where the attorney in good faith can adequately represent both parties and after full disclosure. *Id.* at 1005. The court found there had been full disclosure as well as consent of the debtor corporation and the parent company. The court further found that the representation was adequate in that "no specific demonstrable negative or prejudicial effect" had been pointed out that resulted from the dual representation." *Id.*

While this court acknowledges the sanctity of the debtor's ability to choose private counsel, as well as the wisdom of the Disciplinary Rules regarding multiple representation, the Court must look at each case in

---

5. **11 U.S.C. § 101**
   **Definitions.**
   In this title—
   (13) "disinterested person" means person that—
   (A) is not a creditor, an equity security holder, or an insider;
   (B) is not and was not an investment banker for any outstanding security of the debtor;
   (C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

light of its unique facts and circumstances. Admittedly, no bright line test can be proffered and applied with mathematical precision to determine when disqualification must occur. Not withstanding, the Sixth Circuit has rule that "the Bankruptcy Court's equity powers may not be used to disregard language within the code that is unambiguous." *Childress v. Middleton*, et al. 934 F.2d 723 (6th Cir.1991). The court further held that, "Section 327(a) clearly precludes court approval of a person who is not disinterested, even if the person does not have an adverse interest." *Id.*

The facts in the instant case are closely akin to the facts in, *In the matter of Butterfield Limited Partnership*, 131 B.R. 67 (E.D.Michigan, 1990) (Judge Shapero). In *Butterfield*, the attorney sought to represent both the limited partnership and certain related entities. That case had progressed considerably in its administration as both a disclosure statement and plan of reorganization had been filed at the time UST objected to the dual representation on conflict of interest grounds. Judge Shapero citing, *In re McKinney Ranch Associates*, 62 B.R. 249 (Bankr.C.D.Cal.1986) "stated:

The bankruptcy disqualification rule is substantially broader than the ethics rule. Section 327 disqualifies counsel for a trustee or a debtor in possession who represents any actual adverse interest. *In re Watson Seafood & Poultry Co.*, 40 Bankr. 436, 442 (Bankr.E.D.N.C.1984); *cf. Woods v. City National Bank & Trust*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941) (same rule under Bankruptcy Act). Moreover, it also disqualifies counsel who represents a potential adverse interest in most cases. (sic).

Strong policy reasons support the prohibition of the simultaneous representation of potential conflicts by counsel for a trustee or a debtor in possession. It is the duty of counsel for the debtor in possession to survey the landscape in search of property of the estate, defenses to claims, preferential transfers, fraudulent conveyances and other causes of action that may yield a recovery to the estate. The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict:

Any potential conflict of interest represents a potential to overlook an asset or defense of the estate. Thus a potential conflict of interest, while it may be otherwise ethically proper, it is not normally permitted under section 327.

\*     \*     \*     \*     \*     \*

Because of his fiduciary duties, a general partner of a limited partnership will always be a potential target of claims by a limited partnership debtor. A general partner is responsible for the day to day affairs of the business, and makes the policy decisions that lead to the financial problems that result in bankruptcy. This may involve a breach of fiduciary duty or securities law violations.

The general partners may have received preferential transfers, or have received property of the estate. In addition, a general partner may have given a guaranty of the partnership debts. Counsel for debtor will likely be required to examine the relations between the partnership and its general partners for possible claims against them. Thus the potential conflict in the representation of a general partner of a limited partnership will always disqualify an attorney from simultaneously representing the limited partnership as a debtor in possession or from representing the trustee of a limited partnership.

*Butterfield*, citing, *McKinney*, 62 B.R. at 254, 255–56.

While the court in *Butterfield* held that disqualification was warranted, the court specifically noted "[A]dmittedly we do not have here the situation of an actual existing conflict or adverse interest such as would exist if *HMS & C (Counsel) were simultaneously representing both the debtor (limited partnership) and the general partners in matters related to this bankruptcy.*" *Id.* (Emphasis added)

Counsel for the instant Debtors cited *In re Cardinal Industries, Inc.*, 116 B.R. 964 (Bankr.S.D.Ohio 1990) as persuasive authority for its position. This court agrees

in part with *Cardinal Industries* that no "bright line" test can be employed; instead, a case by case analysis should be used. However, this court finds that the particular facts in the instant case warrant the harsh remedy of disqualification.

 In conclusion, the court notes that bankruptcy law follows the entity theory. Therefore, each debtor is a separate entity with a separate and distinct bankruptcy estate created under section 541 of the Bankruptcy Code. While counsel argues that McDonnell Boyd is not a fiduciary of the debtor, the debtors in possession are statutory fiduciaries of the estate and have a duty to the estate as well as creditors of the estate.

The testimony of Thomas Campbell clearly indicates that the affairs of these debtors are perhaps hopelessly intertwined. Admittedly, Thomas H. Campbell is the CEO of both entities and will be the person giving orders to which ever counsel ultimately represents the debtors. However, because Mr. Campbell candidly admits that he cannot be expected to perform the legalistic gymnastics required for keeping his roles separate, it is further reason that separate counsel should be employed to maintain the separate affairs of the entities.

Clearly, actual and potential conflicts exits between the entities, PDC and THC. THC has an interest that is materially adverse to the interest of PDC, in that there is a debtor creditor relationship by virtue of the claim[6] of Thomas H. Campbell against PDC. Therefore, by virtue of McDonnell Boyd's representation of both debtors, they are representing an interest (that of THC's) which is materially adverse to TDC and are not disinterested. Thus, the conflict is actual and inescapable. By way of illustration, if PDC filed suit against Thomas H. Campbell, McDonnell Boyd could not possibly represent both sides in the litigation. In defense, Counsel alleges that such a scenario is ludicrous as PDC would not sue THC. The Court agrees that left to its devices, PDC and THC would not sue each other, however, there may very well be preferences, fraudulent conveyances, avoidable transfers, or other viable causes of action which should be pursued for the benefit of creditors. While the avoidance of additional expense to the estates is a factor which should be considered, it may not obviate compliance with Sections 327(a) and 101(13). See *Childress v. Middleton,* et al. supra.

Based on all the foregoing, and the case record as a whole, the Court finds that an actual conflict of interest exists between PDC and THC, and that by representing both entities, McDonnell Boyd represents an interest materially adverse to the estate and should be disqualified from simultaneously representing both debtors.

The court hereby orders Counsel for debtors to make an election within five (5) days of the date of this order which entity McDonnell Boyd will represent. The remaining debtor will be given seven (7) additional days to obtain separate counsel.

IT IS SO ORDERED.

6. Claim is broadly defined under the Bankrupt-  cy Code. See 11 U.S.C. § 101(4).