**In re Jesse L. HOWELL, Deborah A. Howell, Debtors.**

**Bankruptcy No. 92–41329–H5–11.**

United States Bankruptcy Court,
. S.D. Texas,
Houston Division.

Dec. 3, 1992.

Danna Kay Archer, Archer & Associates, Houston, Tex., for debtors.

ORDER AND MEMORANDUM OPINION FOR THE AWARD OF FEE COMPENSATION AND REIMBURSEMENT OF EXPENSES

KAREN KENNEDY BROWN, Bankruptcy Judge.

Before the Court is the Application of Archer & Associates, P.C., ("Archer") for Allowance of Compensation and Reimbursement of Expenses of Counsel for Debtor. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334, and under the general order of reference of the district court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

After reviewing Archer's application, this Court ORDERS that the application for attorney's fees be approved and Archer receive compensation in the sum of $6,428.55.

## Facts

Archer was retained by Jesse L. Howell and Deborah A. Howell ("debtors") in January 1992, to represent the debtors' personal interests, including debtors' interest in their wholly-owned corporation, Debbie's School of Beauty Culture ("school"). Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code on February 10, 1992. The case was converted to a Chapter 11 proceeding on April 30, 1992.

On March 3, 1992, an independent attorney, Nelson Jones, filed a Chapter 11 petition on behalf of the school. On April 8, 1992, Archer filed a Motion for Joint Administration of the two estates and this motion was granted on May 20, 1992. Joint administration was discontinued October 9, 1992, upon the oral motion of both estates.

Archer seeks $21,015.97 in accrued professional fees and expenses. A hearing was held October 23, 1992, on Archer's application for compensation. At the hearing, this Court approved Archer's application for $14,587.42, but took $6,428.55 in accrued professional fees under advisement. The $6,428.55 was incurred for professional services rendered to and for Debbie's School of Beauty Culture between February 1992 and June 8, 1992, while Archer was representing both the Howells and the school. Archer ceased legal representation of the school on June 8 due to the emergence of a theoretical conflict of interest between the debtors and the school.

## Discussion

■ Under 11 U.S.C. § 327(a), trustees may employ the services of an attorney so long as the chosen attorney (1) neither holds nor represents an interest adverse to the bankruptcy estate, and (2) qualifies as a disinterested person. These two criteria significantly overlap because "disinterested person," as defined in 11 U.S.C. § 101(14)(E), includes a person who does not have an interest materially adverse to the estate. *See In re Martin*, 817 F.2d 175, 179 n. 4 (1st Cir.1987). If the attorney, at any time during his employment under section 327(a), is not a disinterested person or holds an interest adverse to the estate, then section 328(c) of the Bankruptcy Code allows the bankruptcy court to penalize the attorney by denying her application for compensation, in whole or in part. Use of section 328(c) rests in the discretion of the bankruptcy judge. *See In re Amdura Corp.*, 139 B.R. 963, 978 (Bankr.D.Colo.1992).

■ .There is a general consensus that existence of an "actual" conflict of interest between an attorney's clients requires denial of all of the professional's legal fees because of the improper dual representation. *Woods v. City Nat'l Bank & Trust*, 312 U.S. 262, 267, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941); *In re EWC, Inc.*, 138 B.R. 276, 281–83 (Bankr.W.D.Okla.1992). *But see In re Global Marine, Inc.*, 108 B.R. 998, 1004 (Bankr.S.D.Tex.1987). There is far less agreement when it comes to "potential" conflicts. *See In re Diamond Mtg. Corp.*, 135 B.R. 78, 90–91 (Bankr.N.D.Ill.1990).

One approach to potential conflicts is presented in *In re Kendavis Industries International*, 91 B.R. 742 (Bankr.N.D.Tex. 1988). In *Kendavis*, the law firm representing the debtor, a corporate conglomerate, had engaged in various activities that benefitted the corporate debtor's stockholders to the detriment of creditors, caused unnecessary litigation, and failed to add any value to or otherwise assist in settling the bankrupt estate. *Id.* at 748–51. After reviewing all of the evidence, the *Kendavis* court determined that a serious conflict of interest existed in violation of 11 U.S.C. § 327(a). *Id.* at 751. The court found that the law firm was, in effect, representing the shareholders of the debtor corporation; therefore, the court reduced the legal fees by 50% to penalize the lawyers. *Id.* at 762.

More importantly, the *Kendavis* court discussed the traditional distinction between actual and potential conflicts of interest and came to the conclusion that there is no real distinction. In the court's words, "[t]he concept of *potential* conflicts is a contradiction in terms." *Id.* at 754. The *Kendavis* court held that *any* time an attorney for a debtor corporation has any type of agreement with a shareholder or

any controlling party to protect the party's interest, the attorney holds an actual conflict in violation of section 327(a). That actual conflict arises on the date representation commences. *Id.* The court further stated that even if there were such a concept as a potential conflict, monitoring actual versus potential conflicts would present the court with an administrative nightmare. *Id.* at 756.

The egregious nature of the attorneys' behavior in *Kendavis* is distinguishable on its facts from the current case. *See In re Office Products of America*, 136 B.R. 983, 988 (Bankr.W.D.Tex.1992) (agreeing with the precedent set by *Kendavis*, but distinguishing *Kendavis* because of its compelling fact scenario). Furthermore, in *In re Consolidated Bancshares*, 785 F.2d 1249 (5th Cir.1986), the Fifth Circuit remanded a dual representation case to the bankruptcy court for additional findings and conclusions regarding the issue of whether an attorney's dual representation of both a debtor corporation and one of its directors created what the circuit court termed "a legally disabling" conflict of interest. *Id.* at 1256. Courts have interpreted the *Consolidated Bancshares* to mean that dual representation of related parties in the corporate setting is not a *per se* actual conflict, but instead turns upon the facts of each case. *In re EWC*, 138 B.R. at 284; *Global Marine*, 108 B.R. at 1002.

The First and Third Circuits also shed light on the issue of potential conflicts. The Third Circuit recognizes a viable distinction between the potential conflicts inherent in all joint representation cases and actual conflicts of interest that mandate disqualification and/or punishment of the attorney. *In re BH & P, Inc.*, 949 F.2d 1300, 1316–17 (3rd Cir.1991). As the court eloquently states in *In re Martin*, 817 F.2d 175, 182 (1st Cir.1987), "[t]he naked existence of a potential for conflict of interest does not render the appointment of counsel nugatory, but makes it voidable as the facts may warrant." Both the First and Third Circuits consider the test for a conflict to be a flexible one, with each case judged on its own merits so not every conceivable conflict need "result in sending counsel away to lick his wounds." *Id.* at 183; *see In re BH & P*, 949 F.2d at 1315–17.

■ Ultimately, application of section 328(c) is a matter that is charged to the discretion of the bankruptcy court. *See In re Humble Place Joint Venture*, 936 F.2d 814, 819 (5th Cir.1991); *In re Diamond Lumber, Inc.*, 88 B.R. 773, 776 (N.D.Tex. 1988); *Global Marine*, 108 B.R. at 1006. In *BH & P*, 949 F.2d 1300 (3rd Cir.1991), the circuit court emphasized the flexibility and discretion that rests in the bankruptcy court, and refused to adopt a bright-line rule disqualifying attorneys from undertaking multiple-representation of related bankruptcy estates. Instead, the *BH & P* court opted for a "totality of the circumstances" balancing approach. *BH & P*, 949 F.2d at 1315–17. Likewise, the Fifth Circuit considers the issue of whether an attorney's dual representation presents a "legally disabling" conflict to be a question of fact for the bankruptcy judge. *Consolidated Bancshares*, 785 F.2d at 1256; *see also Martin*, 817 F.2d at 182.

*In re Global Marine*, 108 B.R. 998 (Bankr.S.D.Tex.1987), provides an instructive analogy to the case at bar. Applying the Fifth Circuit's *Consolidated Bancshares* opinion, the bankruptcy court held that an attorney's dual representation of both a controlled entity and its controlling entity is not in and of itself an actual conflict. *Id.* at 1001–03. Instead, the existence of an actual conflict is a fact question. *Id.* at 1002. The creditors in *Global Marine* argued that an intercompany claim existed between the subsidiary and its parent holding company; therefore, dual representation was not allowed under section 327(a). The *Global Marine* court disagreed, however, and upheld the dual representation because the intercompany claim did not create an actual conflict or legally-disabling conflict that would necessitate penalizing the law firm for representing both estates. *Id.* at 1006.

Furthermore, Archer's representation of both the Howells and the school is a classic example of a "mom & pop" bankruptcy

proceeding. *In re Roberts*, 75 B.R. 402 (D.Utah 1987), the seminal case on the subject, is factually similar to the present situation. In *Roberts*, the law firm had filed two separate chapter 11 bankruptcy petitions. One petition was filed on behalf of Larry and Barbara Roberts; the other petition was filed on behalf of Roberts, Inc., the family plumbing and heating business. The law firm continued to represent both the individuals and their wholly-owned corporation and an uncontested reorganization plan was confirmed by the court. The law firm then applied to the bankruptcy court for payment of legal fees incurred in representing all of the debtors. No one objected, but the court, on its own motion, decided that the law firm's dual representation created a serious conflict of interest warranting denial of all costs and legal fees.

On appeal, the district court held that dual representation does not always require "a blanket denial of all legal fees." *Id.* at 405. Instead, dual representation presents merely a potential conflict, which raises a question of fact rather than a *per se* rule of denial. *Id.* at 406. The *Roberts* court based its conclusion on the economic realities of the situation and the "unity of interest" existing between the Roberts and their family business. *Id.* at 406–09. The bankrupt estates are already and obviously in financial distress; to always require (at least) two lawyers in the family business situation simply increases the financial burdens of the estates. *Id.* at 406. The *Roberts* court adopted a flexible balancing test: Where the equities outweigh the need for attorney discipline for failure to disclose potential conflicts, the law does not require denial of fees and costs. *Id.* at 412.

Similarly, in *In re Huddleston*, 120 B.R. 399 (Bankr.E.D.Tex.1990), the law firm sought approval to represent both a chapter 11 debtor corporation as well as its sole shareholder, who was himself a chapter 11 debtor. The U.S. Trustee objected to the dual representation.

The *Huddleston* court, using the same type of reasoning as *Roberts*, decided that there was no *per se* prohibition against an attorney representing both a debtor-in-pos-

session and its debtor-in-possession sole or majority shareholder. *Id.* at 402. The court concluded that finding an impermissible conflict of interest in violation of section 327(a) requires a case-by-case evaluation. The *Huddleston* court then held that the attorney could undertake the dual representation because the close relationship between the two debtors favored joint administration, and, besides, no actual conflict of interest existed. *Id.* at 403. The court, however, cautioned the attorney that fees would be denied (or disgorgement ordered) if the potential conflict apparently inherent in all dual representation situations escalated into an actual conflict. *Id.*

▮ There is no indication that, between February 1 and June 8, 1992, Archer's activities on behalf of the Howells and Debbie's School of Beauty were anything less than appropriate. Archer has maintained detailed billing records and, other than this dual representation issue, has satisfied the standards set forth in *In re First Colonial Corp.*, 544 F.2d 1291, 1298–99 (5th Cir. 1977). Clearly, the interests of the Howells are significantly intertwined with the interests of the school. The success or failure of either debtor's bankruptcy proceeding had, and still has, significant ramifications as to the success or failure of the other debtor's efforts to reorganize. The unity of interest and interdependence that exists between the debtors and the school exemplify the "mom & pop" nature of the present situation so that Archer's dual representation was both economically reasonable and legally appropriate.

Also, when that inherent potential for conflict escalated in degree because of the schools' default on its lease, Archer ceased representing the school and sought the court's permission to officially withdraw as counsel for the school. Concurrently, debtors moved to withdraw their motion for joint administration of the estates. Ms. Archer consistently has acted for and in the best interests of her clients.

Based on the foregoing facts and the broad discretion vested in the bankruptcy court regarding the compensation of professionals hired by the estate, this Court

approves Archer's Application for Compensation and allows compensation in the amount of $6,428.55 to be paid to Archer & Associates, P.C., for professional fees and expenses incurred from February 1, 1992 through July 15, 1992.